WHITTEMORE (ALLEN v.). See Case No. 241.

WHITTEMORE (BROWN v.). See Case No. 2,033.

---

## Case No. 17,600.

### WHITTEMORE v. CUTTER.

[1 Gall. 429;[1] 1 Robb. Pat. Cas. 28.]

Circuit Court, D. Massachusetts. May Term, 1813.

PATENTS — ASSIGNMENT OF MOIETY — JOINT ACTIONS — INFRINGEMENT — MEASURE OF DAMAGES — ISSUANCE OF PATENT — OMISSION OF OATH — CONCEALMENTS AND DEFECTS.

1. Under the patent act of February 21, 1793, c. 11 [1 Stat. 318], if the patentee has sold out a moiety of his patent right, a joint action lies, by himself and his assignee, for a violation of it.

[Cited in Bryan v. Stevens, Case No. 2,066a; Blanchard v. Eldredge, Id. 1,510; Moore v. Marsh, 7 Wall. (74 U. S.) 521, note; Wilson v. Rousseau, Case No. 17,832; Stein v. Goddard, Id. 13,353; Brooks v. Bicknell, Id. 1,944; Potter v. Holland, Id. 11,329; Meyer v. Bailey, Id. 9,516.]

[Cited in brief in Carter v. Bailey, 64 Me. 460.]

2. The making of a patented machine fit for use, and with design to use it for profit, in violation of the patent right, is of itself a breach of the patent right, for which an action lies.

[Cited in Brooks v. Bicknell, Case No. 1,944; Hogg v. Emerson, 11 How. (52 U. S.) 607; Butz Thermo-Electric Regulator Co. v. Jacobs Electric Co., 36 Fed. 197.]

See Woodcock v. Parker [Case No. 17,971]; Odiorne v. Winkley [Id. 10,432]; Lowell v. Lewis [Id. 8,568]; Evans v. Eaton, 7 Wheat. [20 U. S.] 356; Dixon v. Moyer [Case No. 3,931]. See, also, Whittemore v. Cutter [Case No. 17,601].

3. If there be a mere making and no user proved, nominal damages are to be given to the plaintiff. Where the law gives a remedy for a particular act, the doing of that act of itself imports a damage, for which an action lies.

[Cited in Smith v. Pearce, Case No. 13,089; Allen v. Blunt, Id. 217; Byam v. Bullard, Id. 2,262.]

[Cited in brief in Appleton v. Fullerton, 1 Gray, 190. Cited in Fullam v. Stearns, 30 Vt. 455.]

4. If the oath, required by the patent act previous to the issuing of a patent, be not taken, still the patent is valid.

[Cited in Lowell v. Lewis, Case No. 8,568; Crompton v. Belknap Mills, Id. 3,406; Tonduer v. Chambers, 37 Fed. 338; Hartshorn v. Eagle Shade Roller Co., 18 Fed. 91; Holmes Burglar Alarm Tel. Co. v. Domestic Telegraph & Telephone Co., 42 Fed. 222; Beach v. American Box Mach. Co., 63 Fed. 604.]

[Cited in Dyer v. Rich, 1 Metc. (Mass.) 191.]

5. Under the patent act, no defect or concealment in any specification is sufficient to avoid a patent, unless it be with intent to deceive the public.

[Cited in Whitney v. Emmett, Case No. 17,585; Hogg v. Emerson, 6 How. (47 U. S.) 482; Forbes v. Barstow Stove Co., Case No. 4,923; Webster Loom Co. v. Higgins, 105 U. S. 588.]

6. Counsel fees for prosecuting the suit are no proper item of damage in an action for violation of a patent.

[Cited in Boston Manuf'g Co. v. Fiske, Case No. 1,681; Allen v. Blunt, Id. 217; Oelrichs v. Williams, 15 Wall. (82 U. S.) 230.]

[See Bancroft v. Acton, Case No. 833.]

This was an action for the violation of a patent right in a machine for the making of cotton and wool cards. A verdict having been returned against the defendant, he moved for a new trial upon several grounds, which will appear in the opinion of the court.

STORY, Circuit Justice. Several objections, which were taken to the opinion of the court delivered to the jury at the trial, have been argued on the motion for a new trial, and we are now to pronounce as to their validity.

The first objection is founded on the incompetency of the plaintiffs to maintain the present action; one of the plaintiffs being the original patentee, and the other an assignee of a moiety of the patent right, deriving his title under the patentee. It is contended, that no action will lie in this court for an infringement of a patent right in favor of an assignee, unless he be the assignee of the whole title and interest. And the language of the fourth section of the act of February 21, 1793, c. 11 [1 Stat. 322], and the case of Tyler v. Tuel, 6 Cranch [10 U. S.] 325, are relied on in support of the position. It is true, that a party relying on an action given by a statute must bring himself within the provisions of the statute. But where, as in the present case, the law is remedial, it should receive a liberal construction, to effectuate the intentions of the legislature. Upon the very rigid construction, which is assumed by the defendant's counsel an action could not be maintained, where a joint patent should be obtained by two persons, and one of them should assign his whole interest. The action could not be jointly brought by the patentees, because one would have parted with his whole interest; nor jointly by the patentee and the assignee, for it would then be open to the very difficulty which is pressed upon us in this case; nor by either party separately, for it would be splitting the cause of action. Other cases might be put, in which the parties would be wholly without remedy. We are well satisfied, however, that the direction given at the trial on this point was correct. The statute gives to the assignee all the right and responsibility, which the original inventor had in the undivided portion of the patent, which is conveyed; and an action may well be maintained by all the parties, who at the time of the infringement are the holders of the whole title and interest. The case of Tyler v. Tuel [supra] is clearly distinguishable. In the first place, it was brought by persons, who did not purport to have the whole patent right in themselves. In the next place, there was, technically speaking, no assignment of the patent right. The instrument could only oper-

---

[1] [Reported by John Gallison, Esq.]

ate as a covenant or license for the exclusive use of the patent right in certain local districts. But a patent right itself is unsusceptible of local subdivision. Nor is the present case within any of the mischiefs, which were pressed on the court in that case. The language of the fourth section does not seem to have contemplated the case of joint inventors: yet there can be no doubt, that being within the reason of the clause, they must be held within the purview. If either should die, can there be a question that the executor or administrator might well maintain an action jointly with the survivor for an infringement? and in what substantial respect can an assignee in law be considered as distinguishable from an assignee in fact? Upon the most mature reflection, we are satisfied that this objection cannot prevail upon the footing of the statute; and if urged at common law, the case of Boulton v. Bull, 2 H. Bl. 463, where the action was brought by the inventor and his assignee of two thirds of the patent right, would afford a complete answer.

Another objection is to the direction, that the making of a machine fit for use, and with a design to use it for profit, was an infringement of the patent right, for which an action was given by the statute. This limitation of the making was certainly favorable to the defendant, and it was adopted by the court from the consideration, that it could never have been the intention of the legislature to punish a man, who constructed such a machine merely for philosophical experiments, or for the purpose of ascertaining the sufficiency of the machine to produce its described effects.

It is now contended by the defendant's counsel, that the making of a machine is, under no circumstances, an infringement of the patent. The first section of the act of 1793 expressly gives to the patentee &c. "the full and exclusive right and liberty of making, constructing, using, and vending to others to be used" the invention or discovery. The fifth section of the same act gives an action against any person, who "shall make, devise, and use or sell" the same. From some doubt, whether the language of the section did not couple the making and using together to constitute an offence, so that making without using, or using without making, was not an infringement, the legislature saw fit to repeal that section; and by the third section of the act of April 17, 1800, c. 25 [2 Stat. 37], gave the action against any person, who should "make, devise, use or sell" the invention. We are not called upon to examine the correctness of the original doubt, but the very change in the structure of the sentence affords a strong presumption, that the legislature intended to make every one of the enumerated acts a substantive ground of action.

It is argued, however, that the words are to be construed distributively, and that "making" is meant to be applied to the case of a composition of matter, and not to the case of a machine. That it is clear, that the use of certain compositions (as patented pills) could not be an infringement, and unless making were so there would be no remedy in such cases. We cannot feel the force of this distinction. The word "making" is equally as applicable to machines, as to compositions of matter; and we see no difficulty in holding, that the using or vending of a patented composition is a violation of the right of the proprietor.

It is further argued, that the making of a machine cannot be an offence, because no action lies, except for actual damage, and there can be no actual damages, or even a rule for damages, for an infringement by making a machine. We are however of opinion, that where the law gives an action for a particular act, the doing of that act imports of itself a damage to the party. Every violation of a right imports some damage, and if none other be proved, the law allows a nominal damage. On the whole, we see no reason for departing from the plain import of the language of the statute, and this objection also must be overruled.

Another objection is to the direction, that the oath taken by the inventor not being conformable to the statute formed no objection to the recovery in this action. The statute requires that the patentee should swear. "that he is the true inventor or discoverer of the art, machine, or improvement." The oath taken by Whittemore was, that he was the true "inventor or improver of the machine." The taking of the oath was but a prerequisite to the granting of the patent, and in no degree essential to its validity. It might as well have been contended, that the patent was void, unless the thirty dollars, required by the eleventh section of the act, had been previously paid. We approve of the direction of the court on this point, and overrule this objection.

Another objection is to the direction respecting the specification. It was as follows: "That if the jury should be satisfied, that the specification and drawings, filed by the patentee in the office of the secretary of state, were not made in such full, clear, and exact terms and manner as to distinguish the same from all other things before known, and to enable any person skilled in the art or science, of which it is a branch, or with which it is most nearly connected, to make and use the same, this would not be sufficient to defeat the right of the plaintiffs to recover in this action, unless the jury were also satisfied, that the specification and drawings were thus materially defective and obscure by design, and the concealment made for the purpose of deceiving the public. In this respect our law differed from the law of England. That if the specification and drawings were thus materially defective, it afforded a presumption of a designed concealment, which the jury were to judge of.

That in deciding, as to the materiality of the deficiencies in the specification and drawings, it was not sufficient evidence to disprove the materiality, that, by studiously examining such specification and drawings, a man of extraordinary genius might be able to construct the machine, by inventing parts, and by trying experiments. The object of the law was, to prevent the expenditure of time and money in trying experiments, and to obtain such exact directions, that, if properly followed, a man of reasonable skill in the particular branch of the art or science might construct the machine, and, if from the deficiencies, it was impracticable for such a man to construct it, the deficiencies were material." In order fully to understand the objection to this direction, it is necessary to advert to the third section of the act of 1793, which specifies the requisites to be complied with in procuring a patent, and the sixth section of the same act, which states certain defences, of which the defendant may avail himself to defeat the action, and to avoid the patent. The third section, among other things, requires the party applying for a patent to deliver a written description of his invention, and of the manner of using, or process of compounding the same, in such full, clear, and exact terms, as to distinguish the same from all other things before known, and to enable any person skilled in the art or science, of which it is a branch, or with which it is most intimately connected, to make, compound, and use the same; and in the case of any machine, he shall fully explain the principle, and the several modes, in which he has contemplated the application of that principle, or character, by which it may be distinguished from other inventions. The sixth section provides, among other things, that the defendant may give in his defence, that the specification filed by the plaintiff does not contain the whole truth relative to his discovery, or that it contains more than is necessary to produce the described effect, which concealment or addition shall fully appear to have been made for the purpose of deceiving the public. It is very clear, that the sixth section does not enumerate all the defences, of which the defendant may legally avail himself; for he may clearly give in evidence, that he never did the act attributed to him, that the patentee is an alien not entitled under the act, or that he has a license or authority from the patentee. It is therefore argued, that if the specification be materially defective, or obscurely or so loosely worded, that a skillful workman in that particular art could not construct the machine, it is a good defence against the action, although no intentional deception has been practiced. And this is beyond all question the doctrine of the common law; and it is founded in good reason; for the monopoly is granted upon the express condition, that the party shall make a full and explicit disclosure, so as to enable the public, at the expiration of his patent, to make and use the invention or improvement in as ample and beneficial a manner as the patentee himself. If therefore it be so obscure, loose, and imperfect, that this cannot be done, it is defrauding the public of all the consideration, upon which the monopoly is granted. Bull. N. P. 77; Turner v. Winter, 1 Term R. 602. And the motive of the party, whether innocent or otherwise, becomes immaterial, because the public mischief remains the same. It is said, that the law is the same in the United States, notwithstanding the wording of the sixth section, for there is a great distinction between a concealment of material parts, and a defective and ambiguous description of all the parts; and that in the latter case, although there may be no intentional concealment, yet the patent may be avoided for uncertainty as to the subject matter of it. There is considerable force in the distinction at first view; and yet, upon more close examination, it will be difficult to support it. What is a defective description, but a concealment of some parts, necessary to be known in order to present a complete view of the mechanism? In the present case the material defects were stated, among other things, to consist in a want of a specific description of the dimensions of the component parts, and of the shapes and position of the various knobs. Were these a concealment of material parts, or a defective and ambiguous disclosure of them? Could the legislature have intended to pronounce, that the concealment of a material spring should not, unless made with design to deceive the public, avoid the patent, and yet that an obscure description of the same spring should at all events avoid it? It would be somewhat hazardous to attempt to sustain such a proposition.

It was probably with a view to guard the public against the injury arising from defective specifications, that the statute requires the letters patent to be examined by the attorney general, and certified to be in conformity to the law, before the great seal is affixed to them. In point of practice, this must unavoidably be a very insufficient security, and the policy of the provision, that has changed the common law, may be very doubtful. This, however, is a consideration proper before another tribunal. We must administer the law as we find it. And, without going more at large into this point, we think that the manifest intention of the legislature was, not to allow any defect or concealment in a specification to avoid the patent, unless it arose from an intention to deceive the public. There is no ground therefore, on which we can support this objection. Considering however the importance of the question in a general view, if the cause had rested on this point, I should have been disposed to have had it certified, on a division of opinion, for the determination of the supreme court.

Another objection is to the direction to the jury, that the letters patent were to be considered as granted for an improvement in manufacturing cards, and not for the whole machine described in the specification. This direction was given under impressions derived from the case of Boulton v. Bull; but we are now satisfied, that the direction was erroneous. The declaration is for an infringement of the patented machine, and although the letters patent state, that the grant is for "a new and useful improvement in manufacturing cards," yet the specification must be considered as controlling the generality of expression, and limiting the grant to the machine specifically described therein. It is indeed clear, from all the other papers in the cause, that the invention and the patent have always been considered by the patentees as confined to a specific machine.

The last objection, which has been urged, is to the direction, that the extraordinary expenses of vindicating the right of the plaintiffs, such as counsel fees and expenses of witnesses beyond the taxable costs, ought to be considered as items of actual damage. And such, at the trial, we had considered the established rule to be in estimating damages in cases of mere tort, whether the action was for the redress of a personal injury, or the vindication of a personal right. Since the trial, however, we have seen the case of Arcambal v. Wiseman, 3 Dall. [3 U. S.] 305, in which the question, as to counsel's fees, was directly before the supreme court. There can be no doubt that the case was founded on a tort; and we feel ourselves bound by that decision, whatever might have been the opinion we should otherwise have been disposed to entertain.

For the errors, therefore, in the two last exceptions, a new trial must be granted. A new trial awarded.

[For another hearing of this cause, see Case No. 17,601.]