Fullam et al. *v.* Stearns et al.

SEWALL FULLAM AND WIFE, AND BENONI BUCK AND WIFE,
*v.* PAUL W. STEARNS AND FERDINAND HAWKINS.

*Pleading. Fixtures. Officer. Attachment of machinery. Injury
to building in removing machinery therefrom under an attach-
ment or execution. Damages. Proper application of the maxim
" de minimis non curat lex."*

If, in an action of trespass, the defendant pleads the general issue, accompanied
with a notice of special matter in defence by way of justification under pro-
cess of law, the whole merits of the question are thereby opened, and a new
assignment is not necessary to enable the plaintiff to recover on the matter
alleged in the declaration by way of aggravation, as for a distinct and sub-
stantive cause of action.

Machinery in a bedstead manufactory and a grist mill, consisting of a planing
machine, a machine for cutting screws, a turning lathe, a circular saw and
frame, and a boring machine, which, though spiked to the floor, studs and
posts of the building, could still be removed, and were in fact removed with-
out difficulty or essential injury either to the building or the machinery
itself, and were used in another building, *Held*, to be personal property and
no part of the real estate as between the mortgagee and mortgager.

An officer who seeks admission into a mill or shop, for the purpose of attach-
ing machinery therein, whether as the property of the owner of the mill, or
another person, may, if admittance is refused after he has requested it, break
into the building, using so much force as is necessary for that purpose, and
no more.

Machinery, which is personal property, and subject to attachment and levy of
execution, may be removed by the attaching officer from the building which
contains it; and if in so removing it, the officer unintentionally does some
small injury to the building, he will not on that account be a trespasser *ab
initio*. He must not, however, act wilfully, rashly, maliciously or wantonly.

If machinery belonging to the mortgagor, is levied upon while in a building
belonging to the mortgagee, and the officer is allowed by the mortgagee to
sell it upon execution in the building, the officer or his assistants will not be
liable to the mortgagee for articles of personal property belonging to the lat-
ter, which were taken or lost by the bidders, without the knowledge of the
officer, or those assisting him.

*Held*, that the officer in attaching a lathe, was at liberty, in a proper manner,
to take up a platform to which it was attached and which had been erected
there, being nailed to the floor solely for the convenience of operating the
lathe, and also to take down a partition erected and nailed to the building to
keep the shavings made by the lathe away from another part of the build-
ing, it being necessary to remove such platform and partition in order con
veniently to take the lathe out of the building.

Fullam et al. *v.* Stearns et al.

*Held,* also, that the officer was not liable as a trespasser, *ab initio,* for not replacing such platform and partition, after he had removed the lathe.

In levying an execution upon, and removing certain machinery from a building, in order to disengage it from the bands by which it was connected with the shafting, which bands did not belong to the owner of the machinery, but to the mortgagee of the building, the defendants cut the thongs by which the bands were laced together, which thongs could have been easily untied and taken out without cutting. The testimony on trial tended to show that these thongs were considerably worn and of small value. The court charged the jury that if they found that the thongs were old, worn out and nearly worthless, the defendants would not be liable for cutting them, unless they did so wantonly, and advised them, as the suit appeared to be brought to try the defendants' right to enter the building and take the machinery, not to decide it upon the ground of a trifling damage of this kind to the thongs, provided the officer acted in good faith.

*Held,* that these instructions were erroneous, because the damage done by the defendants' wrongful act to the thongs, though small, was still capable of estimation, and that the plaintiff, the mortgagor, was entitled to recover for such damage, and therefore a new trial was granted.

To give a right of action, there must be both an injury and a damage; but every violation of a right imports some damage; and if none other be proved, the law allows nominal damages. BENNETT, J.

The maxim " *de minimis non curat lex,*" when properly applied to prevent a right of recovery, has reference to the injury, and not to the resulting damages. BENNETT, J.

The maxim " *de minimis non curat lex,*" is never properly applied to a wrongful and positive invasion of property, when damages result which are capable of estimation.

Machinery in a shop, mill, or factory, may be attached by leaving in the town clerk's office an attested copy of the writ with the officer's return thereon specifically describing the machinery attached, although the officer does not, previous to the attachment, either see the property or go near the building containing it.

All that is necessary to create a valid lien in the case of such an attachment, is that the return of the officer should be sufficiently precise to show the identity of the property attached.

The statement in the return, that property is attached as belonging to both defendants, when in fact one of them has no interest in it, is no part of its description, and such attachment will be valid to hold all the interest of either of the defendants in the property.

Machinery was attached in a suit against two defendants, by leaving a copy in the town clerk's office, upon which the officer's return, after specifically

describing the machinery, stated that it was contained in the shop occupied by both of the defendants, when in fact it was occupied by only one of them.

*Held,* that this, as matter of law, did not render the attachment invalid, but that it was merely an inaccuracy in a circumstance affecting the identity of the property, and was entitled to be considered by the jury only upon that ground.

TRESPASS for breaking and entering the grist mill and shop of the plaintiffs in Reading, and taking therefrom certain machinery and other property, and for remaining there a long time, injuring the building and the personal property therein, and hindering the plaintiffs in their business, etc.

Plea, the general issue, and a notice of special matter in defence, setting forth a justification under process as hereinafter mentioned. Trial by jury, at the December Term, 1856,—UNDERWOOD, J., presiding.

The plaintiffs claimed title to the mill and shop by virtue of a mortgage thereof from Powers Crossett to them, upon which they had obtained a decree of foreclosure, which expired April 16th, 1855, a few days after which they took possession of the premises, and retained possession thereof until the trespass complained of.

The plaintiffs introduced evidence tending to prove that when they took possession of the mill and shop, the real estate was not equal in value to the mortgage debt, and that they then bought of Crossett all the personal property which he owned in and about the premises, and that the property, for taking and injuring which this suit was brought, was in the mill and shop when they took possession, and remained there until taken by the defendants.

The plaintiffs also introduced evidence tending to prove that a part of the machinery in question was in the grist mill and a part in the shop; that the machinery was fastened to the buildings by being spiked to the floors, studs and posts, and was all propelled by water; that shafting and pulleys were fastened to the buildings to propel the machinery, and that bands led from the pulleys to the machinery when it was taken; that the machinery had been in use there for many years; that in front of one of the turning lathes a platform had been built, about eight inches high, and spiked to the timbers of the mill, to enable the operator at the lathe to use it

with more convenience; that this lathe and a planing machine were both very large and heavy, and had to be taken to pieces to be removed from the mill, and that the shop was built expressly for the manufacture of bedsteads.

The plaintiffs also introduced evidence tending to prove that on the 21st of July, 1855, while the plaintiff Fullam was at work in the mill with the door locked, the defendants came there and requested him to open the door and let them take out the machinery in question ; that he forbid their entering the mill, and placed himself against the door on the inner side to keep them out, but that they forced open the door, breaking the fastenings, and forcing Fullam back from the door ; that they then went into the mill and forced up a circular saw frame from its fastenings, aud cut the band with which the saw was propelled, by cutting the thong with which the band was laced and fastened together; that the thong could easily have been taken out without cutting ; that the defendants then took the saw and frame from the mill into the street and sold it, and afterwards returned into the mill with twenty or thirty other persons ; that Fullam notified the defendants that he should treat all persons as trespassers who should enter the mill; that the defendant Hawkins then proceeded to put up the residue of the machinery at auction, and sold it in the mill and shop, and that the defendants remained there for two or three hours, selling the machinery, and when it was all sold, the defendants, with others, removed it therefrom, except what had been purchased at auction by Fullam's agent ; that the defendants tore up and broke to peices the platform above described, spoiling the boards of which it was made, and also tore down a board partition in the mill, nailed to a beam overhead and to a cleat nailed to the floor, which partition was erected at one end of the lathe to keep the shavings made by the machinery from the corn cracker in the grist mill; that after the removal of the machinery the defendants left the mill without replacing the partition or platform, or closing the door of the mill ; that the materials of which the platform and partition were constructed were broken and scattered about the mill, and that the property of the plaintiffs in the mill was removed and left in great confusion, and that two or three iron wrenches and a lot of nuts and screws, the property of the plaintiffs, which were in the mill at

the time the defendants entered it, were entirely lost or carried away.

The plaintiffs gave evidence to show that the defendants cut several other bands connected with the machinery in the same manner in which they cut the band to the circular saw, and that the bands belonged to the plaintiffs. They also gave evidence that the premises on which the mill and shop stood, together with the mill, shop and machinery, were the sole property of Crossett from 1850, to the time they took possession, in April, 1855, and that Crossett had, during all that time, been in the sole occupancy thereof.

The plaintiffs also gave evidence of the value of the property thus taken away and of the injuries otherwise sustained, and rested their case. The plaintiff Fullam testified that he did not think any injury was done wantonly.

The defendants gave in evidence a deed from B. F. Pinney to Crossett, of one-half of the premises, dated Nov. 24, 1849, and another from the same to the same, of the other half of the same premises, dated April 4, 1850, also the record of a judgment rendered by the Windsor County court, May Term, 1855, in favor of the defendant Stearns against said Crossett and one Silas A. Robinson, the writ, upon which said judgment was rendered, being dated May 12, 1854, and served on the same day, by attaching machinery, and lodging a copy in the town clerk's office of said Reading with a return thereon as follows:,

STATE OF VERMONT, ) At Reading, on the 12th day of
   WINDSOR COUNTY ss.   ) May, A. ). 1854, then by virtue of
this writ, I attached, as the property of the within named defendants, one planing machine, one machine for cutting right and left screws for bedstead rails and posts, and two turning lathes, one circular saw and frame, one boring machine, the above mentioned property being in the shop situated and being upon the premises now occupied by the said defendants, and on the same day I lodged a true and attested copy of this attachment, with a list of the property so attached endorsed thereon, in the town clerk's office of said town of Reading.

Attest, FERDINAND HAWKINS, Deputy Sheriff.

The defendants also gave in evidence an execution issued upon said judgment, dated May 25, 1855, and less than thirty days after the rendition thereof, and proved that the execution was delivered

to said Hawkins the same day; that he immediately advertised said property and sold it, July 21, 1855, upon this execution, but Hawkins admitted on cross examination, that when he made this attachment, he did not go near said mill or shop, and that he did not see the machinery; that Stearns made the writ himself, and the copy and return thereon, and directed him to lodge it in the town clerk's office, and that he thereupon signed the return on the copy and left it at the town clerk's office as directed.

The defendants further gave evidence tending to prove that said platform was nailed to the sills of one of the lathes, and that the lathe could not be removed without tearing it in peices, that the partition was in the way of removing some of the machinery, and that they could not conveniently remove it without taking down the partition, but they did not show that the machinery could not be removed without tearing down said partition; and they also gave evidence to prove that the thongs to the bands were considerably worn and of small value.

They further gave evidence that Fullam did not forbid their selling the property in the mill and shop, and that he employed a man to bid upon the machinery, and that he was in the mill a part of the time during the sale, and waived all objection to selling it in the mill.

The only evidence in the case, tending to show that Crossett & Robinson were in possession of the premises at the time of the attachment, was the following words contained in Crossett's deposition read in the case.

" Silas A. Robinson was occasionally in the shop, in 1854, he wanted to put a grindstone there, and I let him do it."

The defendants gave evidence to show that they did not take away any wrenches, nuts or screws, and did not know what became of them.

The defendants' evidence further tends to show that when the officer went to the mill to sell, agreeably to his advertisement, he found the door of the mill fastened, and Fullam in the mill, and that before he forced the door he demanded admittance for the purpose of obtaining the property, which was refused; that Fullam fastened the door on purpose to keep him out, and prevent his getting the property; that he pushed the door open with his foot, and

Fullam et al. *v.* Stearns et al.

in so doing split a wooden catch of trifling value. The defendants' evidence also tended to show that after the officer had sold one piece of machinery out doors, and after Fullam told them he should hold all as trespassers who should come into the mill, and after the officer commenced selling in the mill, Fullam bid off part of the machinery, by an agent, and that the officer supposed this agent was bidding for Mr. Fullam, and that it was his choice to have it sold without removal where it stood in the mill.

The following facts appeared in the case on trial:

The machinery in question was placed in the mill some time subsequent to its erection, and when sold by the defendant Hawkins on the execution, it was all taken from the shop, except a little of not much value, which was bought by the plaintiff Fullam. All the large and principal machinery was taken out and set up in another shop in the same town. There was no difficulty in removing the machinery, and it was removed without material injury, either to the machinery or the buildings, and when it was removed, the shop building from which it was taken could be used for any purpose for which such buildings are adapted, either by putting in other similar machinery, or for any other purpose that the owner might desire.

The plaintiffs requested the court to charge the jury,

1. That if the machinery was built and constructed to be permanently used in the mill and shop, with shafting and pulleys permanently erected to fit and propel it, and was placed in the place where it was intended to be used, and thoroughly fastened there by being nailed to the buildings and connected with pulleys by bands, it was a part of the real estate, and passed to the plaintiffs by their mortgage and foreclosure.

2. That if the machinery was personal property, and the plaintiffs came honestly into the possession of it by purchase, while it was in their actual custody and manual possession, the defendants had no right to forcibly take it from them, nor had they any right to break open the door of the mill, while locked and held by one of the plaintiffs, to get possession of the property.

3. That if they had the right to break and enter the mill to take out the machinery, they still had no right to stay in the plaintiffs' buildings to sell it.

4. That they had no right to tear up the platform, or break down the partition, or cut the bands as a mere matter of convenience, even if they had a right to take out the machinery, but they must show that it was absolutely necessary to do so in order to take out the machinery, and in that case, if they neglected to replace and repair them, they were trespassers in breaking down and removing them.

5. That the copy left in the town clerk's office was not notice to the plaintiffs of the attachment, unless Crossett and Robinson were in the open and notorious possession of the premises at the time the attachment was made, and that it was no notice of any attachment of machinery in the mill.

6. That the leaving of the copy in the town clerk's office without seeing or going near the property, was no attachment of that property.

7. That if the defendants stayed in the mill and shop, and sold the machinery there without the consent of the plaintiffs, and any wrenches, nuts and screws were thereby lost, the defendants would be liable therefor.

The court refused to charge the jury as requested, but did charge them that the machinery was personal property, and that at the time it was attached, it was liable to be attached on Crossett's debts; that the defendants had a right, if Fullam refused admittance on demand, to break into the mill, even if the machinery and mill were in the actual custody and manual possession of the plaintiffs, as their testimony tended to show at the time, doing no more damage than was necessary to enable them to get in; that the officer had a right to take out the machinery, doing no more damage than was necessary for that purpose; that the defendants would not be justified in doing any injury to the platform, partition, or bands, but if in getting out the machinery they did unintentionally injure them in some small degree, the officer exercising reasonable care in that respect, the defendants ought not to be held responsible for such damage, but if the jury should find that the defendants wilfully, rashly, maliciously or wantonly did any damage in that respect, they should be held liable for it.

They were further told in relation to the thongs holding the bands together, that if the jury found they were old, worn out, and

Fullam et al. *v.* Stearns et al.

nearly worthless, if the defendants did cut them, unless they did it wantonly, the defendants ought not to be held liable for it. They were further told, that as the suit appeared to be brought for the purpose of trying the defendants' right to enter the mill and to the machinery, the court would not advise them to turn the case on some trifling damage in the above particulars, provided they found the officer and his assistants conducted in good faith.

The jury were further told, that if they found that Fullam's objection to the defendants' entering the mill, and his forbidding them to come in, had reference to his claim to own the machinery, and to prevent the officer from taking and selling it at all, it would be for them to say whether (when it was found the officer determined to take it and sell it) he did not waive the matter of their selling in the mill, and whether the officer was not justified from the subsequent conduct of Mr. Fullam in bidding on the property by himself or agent in the mill, and the other circumstances, in believing that Fullam had waived that point; that if they did so find, the plaintiff could not recover on that ground, but if they found that the officer persisted in holding his auction in the mill, against the express orders or known wishes of Fullam, then the plaintiff would be entitled to recover.

As to the wrenches, nuts and screws lost by the plaintiffs, the jury were told that if the sale took place in the mill by the plaintiffs' consent, the defendants would not be liable for them, unless the jury found that the defendants or some of them took them, that if they were taken or lost by the bidders, without the defendants' knowledge, they would not be liable.

The jury returned a verdict for the defendants.

To the charge as given, and the refusal to charge as requested, the plaintiffs excepted.

*V. S. Fullam,* for the plaintiffs.

*Washburn & Marsh,* for the defendants.

The opinion of the court was delivered by

BENNETT, J. As in this case, the defendants, after pleading the general issue, have given notice that they shall justify the

entry under process of law, the whole merits of the question are opened by this form of pleading on both sides; and a new assignment is not necessary to enable the plaintiffs to recover on the matter alleged in the declaration by way of aggravation, as for a distinct and substantive cause of action; *Alsop* v. *Price,* Douglas 160; *Hubbell* v. *Wheeler,* 2 Aikens 359.

The plaintiffs are then entitled to have the whole merits of their case considered. The main and important question in the case involves the inquiry whether the property sold on the execution is to be treated as personal estate, or as a part of the realty. If as a part of the realty, it would pass under the mortgage. Since the recent case of *Hill* v. *Wentworth,* 28 Vt. 429; in which the doctrine in relation to fixtures was considered somewhat at length, it can not be necessary, nor hardly expedient to go over the same ground again. The doctrine of that case is, that if articles of machinery, used in a factory for manufacturing purposes, are only attached to the building to keep them steady and in their place, so that their use, as chattels, may be more beneficial, and are attached in such a way that they can be removed without any essential injury to the freehold, or to the articles themselves, they still remain personal property. The exceptions in the case at bar, detail the particular manner in which the machinery was annexed to the building, and also state the facts that the building was erected for a bedstead shop, and the machinery placed in it after it was finished and for the purpose of carrying on the business for which the shop was designed, and that there was no difficulty in removing the machinery, and that it was in point of fact removed without material injury to the freehold or to the machinery. The shop, it is found, could be used for any purpose for which such buildings are adapted, either by putting in new machinery of the like kind, or for other purposes, as the owner might elect. All the large and principal machinery was, in fact, set up in another shop in the same town.

The case also finds, that the plaintiffs themselves, treated this machinery as personal property, at the time they took possession of the mortgaged property under the foreclosure.

This case is obviously within the principles of the case of *Hill* v. *Wentworth.* When there is no controversy about the facts, the

character of the property, whether it is to be regarded as personal or real, becomes a question of law, and the court might well charge the jury, that as matter of law, the machinery in question was personal property, and liable to attachment on the debts of Crossett. The officer, if refused admittance into the building by Fullam, had a right, after a request to be admitted and a refusal, to break into the building, using so much force as was necessary and no more. The building was not the *castle* of Fullam, although he was in the actual possession, and the outer door could not protect his chattels from attachment, and much less the chattels of a third person. The plaintiffs have no ground to complain of this part of the charge.

As the officer had the right to levy on the machinery, he must have the right to remove it from the building, exercising all reasonable care in so doing, and if some small injury was done unintentionally in so doing, the officer should not, for such cause, be made a trespasser, *ab initio.* He was in the exercise of a legal right, and if he used reasonable care, he exercised the right in a legal manner. The jury were, in fact, charged that the officer must not act willfully, rashly, maliciously or wantonly.

The court below, in effect, assumed in their charge, that if the officer continued in the possession of the building, keeping the property levied upon in it, and persisted in holding the auction in the shop, against the will of Fullam, he became a trespasser, *ab initio.*

Of this, the plaintiffs can not complain.

The case shows that the defendants gave evidence tending to show that Fullam did not forbid their selling the property in the mill and shop, and that he employed a man to bid on the machinery, and that he himself was in the mill a part of the time, and waived all objections to the officers selling the property in the mill. If Fullam waived all objections to the officers selling in the mill, he can not now complain of that. The jury have found the sale was made in the mill by the consent of Fullam, and that the nuts, wrenches and screws were taken or lost by the bidders, without the knowledge of the defendants.

Upon such a state of facts, the defendants can not be made liable for the acts of the bidders, and this was not even claimed on the argument.

It seems the platform was nailed to the sills of one of the lathes, to which it was attached, and that this lathe could not be removed without taking the platform to pieces, and that some of the machinery could not be conveniently removed without taking down the partition, which had been put up at one end of the lathe to secure the shavings from falling into the corn cracker in the grist mill. The design of the platform was to accommodate the operator better in the use of the lathe, and it can hardly be regarded as a permanent part of the mill. We think the officer had the right to remove the platform and the partition in a proper manner, if found necessary, and the case finds that the machinery was removed without material injury to the mill, or the machinery itself.

It is claimed that at all events, it was the duty of the officer to have replaced the platform and the partition. But when the machinery was removed, the use of the platform and of the partition was superseded, and if it had been the duty of the officer to have replaced and repaired them, the omission to do it, would have been but a *non feasance*, and the officer could not by such neglect, have been made a trespasser, *ab initio*.

We have more difficulty in relation to the manner in which the court put the case to the jury, relative to the bands or belts. The case is not put to them upon the ground that it was necessary to cut the thongs with which the bands were laced or fastened together.

It could not have so been, for the case says the evidence went to show that they could have been easily taken out without cutting.

With reference to the value of the thongs, the case should have been put to the jury upon the ground that they found just what the defendants' testimony tended to prove, and nothing more, and that was *" that the thongs were considerably worn and of small value."* The court were not warranted upon such evidence to put the case to the jury upon the hypothesis that they should find the thongs, *to be old, worn out and nearly worthless.* The court should have charged the jury as to what the law would have been, had the jury found the *thongs* to have been " considerably worn and of small value." Would the court, upon such a finding, apply the maxim *de minimis non curat lex?* While on the one hand, we should be unwilling to hold out inducements to useless and vindictive litigation we should on the other, be slow to violate and

Fullam et al. *v.* Stearns et al.

set aside well settled principles. To give a right of action, it has often been said there must be both an injury and a damage, and it has been as often said that every violation of a right imports some damage, and if none other be proved, the law allows a nominal damage. See *Whitemore* v. *Cutter*, 1 Gallison 429. The maxim, " *de minimis non curat lex*," I apprehend, whenever it is applied correctly to take away a right of recovery, has reference to the injury, and not to the resulting damage.

If a person has a right to vote at an election, and he is refused this right, he may have his action, even though the person, for whom he proposed to vote, should chance to be elected. *Ashley* v. *White*, Lord Ray 938. So if a sheriff neglect to return an execution, the creditor may have his action for nominal damages; although no damage appeared to have resulted from the neglect. *Kidder* v. *Barker*, 18 Vt. 454. In the case of *Clifton* v. *Hooper*, 6 Adolphus & Ellis, N. S. 467, in an action for not executing a *ca. sa.*, the jury found the defendant in default, but that the plaintiff had sustained no damage, and still judgment was given for the plaintiff for nominal damages. Lord DENMAN in that case said : " that where a clear right of a party was invaded, in consequence of another's breach of duty, he must be entitled to an action against .that party for some amount, and that there was no authority to the contrary."

In *Ashley* v. *White*, 2 Lord RAY, it is said by Lord HOLT, " that every injury to a right imports a damage in the nature of it, though there be no pecuniary loss." See also, *Barker* v. *Green*, 2 Bingham 317. The case of *Williams* v. *Moyston*, 4 M. & W. 145, is not in conflict with *Clifton* v. *Hooper*. In that case the distinction beetwen *mesne* and *final* process is well taken. In the case of mesne process, no right of the creditor is violated by an escape, unless he is delayed in his suit thereby, or has sustained actual damage. The creditor, it is said in that case, simply had the right to have the sheriff keep the prisoner ready to be removed at any time the plaintiff might elect, by *habeas corpus*, into the superior court, there to be charged with a declaration, or to be declared against as in the custody of the sheriff. The right of the plaintiff was correlative to the duty of the sheriff, and unless the plaintiff was delayed in his suit by reason of the escape, no right

of his had been violated; but if delayed, though for ever so short a time, a right had been violated, and he has his action.   See also, *Cady* v. *Huntingdon,* 1 N. H. 138.   So in *Young* v. *Spear,* 10 B. & C. 145, the action was by the person who had the reversionary interest against a lessee, and the court refused to allow nominal damages for a wrongful act of the lessee, which did not injure the estate in reversion.   Here also, no right of the reversioner was violated.   A legal right must be violated, and a damage ensue; but actual, perceptible damages are not indispensable, and they will be presumed to follow.   *Embury* v. *Owen,* 6 Exch. 352, 372; *Williams* v. *Esling,* 4 Barr 486.   The maxim, "*de minimis non curat lex,*" has been applied to claims for tithes, where the quantity was small and involuntarily left upon the ground in the process of raking; yet, if there is a fraud, or an intention to deprive the person of his right, the maxim will not be applied to cut off his right of recovery, though the quantity be small, and in *Glanville* v. *Stacy,* 6 B. & C., the plaintiff had a judgment on his verdict for three shillings, and in the *Seneca Railroad Company* v. *Auburn Railroad Company,* 5 Hill 175, it is said the maxim "*de minimis,*" etc., is never applied to a positive and wrongful invasion of anothers property; and I apprehend it may at least be safe to say, it should never in such cases be applied, to cut off a recovery, where the positive and wrongful act causes damages, which can be fairly valued.   The damage done to the plaintiff's property by cutting their thongs, which fastened the bands together, though "considerably worn and of small value," could be estimated, and we can not say that he shall not recover them.   In *Paul* v. *Slason et al.,* 22 Vt. 235, the jury were charged, that if they found that it (the pitchfork), was merely used for a portion of a day in removing the plaintiff's property, there attached, and was left where it was found, so that the plaintiff had it again, and that it was not injured by its use, they were not bound to give the plaintiff damages for such use.   The supreme court, it is true, affirmed this ruling, and applied the maxim, "*de minimis non curat lex,*" to the case.   It may be remarked that in that case the pitchfork was used in removing the plaintiff's hay, which had been attached and which was to be removed at his expense, and it may, in one sense be said, that the fork was used in the business of the plaintiff

and for his benefit, and the jury must have found that the plaintiff had his fork again, and that it had not been injured by the officer in removing the hay. We apprehend that case does not warrant the charge of the court in the case at bar. Both the injury and the damage were too insignificant to be made the ground of an action. Indeed, the jury must have found there was no actual damage, and the court would not imply a damage from such a taking, though perhaps it might technically have constituted a wrongful taking by the officer, though taken to be used in removing the plaintiff's hay, and for the expense of which the plaintiff was to be charged.

In regard to the validity of the attachment, it may be remarked, the officer in his return has named all the articles attached *specifically*, as the property of Crossett & Robinson, and described them as being in the shop upon the premises occupied by Crossett & Robinson. We are to assume in this case the officer did not go near the mill or shop where the property was, as no question was submitted to the jury on this point. But the machinery was *potentially* within the power and control of the officer, and this is a case where a valid attachment could be made against every body, by leaving a copy of the process with the town clerk, without any removal of the property. It would have been a useless ceremony for the officer to go to the shop, as much so as to require him to go upon land before he attaches it, and his *lien* by such a service is as perfect as if he had removed the property. The officer not only had *potentially* the property, subject to his control, but had, by leaving his copy with the town clerk, given timely and unequivocal notice of his attachment, and he could assert his control over it to the exclusion of the debtors and all other persons. See *Lyon* v. *Rood*, 12 Vt. 233.

It is claimed that no valid *lien* was created by the attachment, but all that is necessary is, that the officer's return should have so much precision as may be necessary to give identity to the property attached. The fact that the property was attached as the property of Crossett & Robinson is no part of its description, and the attachment would be valid to hold all Crossett's interest in it, be the the same more or less. The fact that it was stated in the officer's return, to be in the shop occupied by Crossett & Robinson, although in fact occupied by Crossett alone, can have no conclu-

sive effect.    It may be an inaccuracy in a circumstance effecting the identity of the property, but as no question was made on that point there was no occasion to submit it to the jury.

The service of the writ was sufficient notice to both defendants to appear, though the whole property attached, in fact, belonged to one of them, and if the description of the property in the return was too defective to create a *lien* upon it, still I should apprehend the service might bind the party as a notice.    Though the case, in the main, is right, yet on the one point named, for the reasons we have assigned, we feel constrained to say there was error, and though we regret the opening of this case to a fresh litigation, yet we should much more regret the violation of what we regard as well settled principles of law.

The result must be a reversal of the judgment of the county court, and the cause is remanded.