Andrea vs. Thatcher and others.

24 471
91 625

## ANDREA vs. THATCHER and others.

*Instructions to jury—Reversal of judgment.—Abuse of legal process,*

1. A judgment will not be reversed under chapter 101, Laws of 1868, because the judge has *modified* an instruction in writing asked by counsel, and then given it to the jury.
2. This court will not reverse for errors in the instructions, when it is clear that the verdict and judgment could not have been different, on the evidence.
3. Where, within an hour after the rendition of judgment in an action for forcible entry, etc., and with no time given the defendant therein to remove his family, or provide for their protection, they were turned into the street in the night, at an inclement season, and their furniture, clothing and goods damaged, broken and thrown into the mud : *Held*, that it was a clear case of an abuse of legal process, for which the officer was liable.

APPEAL from the Circuit Court for *Winnebago* County.

On the 15th of October, 1867, an action was commenced by *Andrew Towle* against one William Smith, in a justice's court in said county, as for forcible entry and detainer of certain real property in the village of Menasha, of which said Smith was then in possession ; and, on the 31st of the same month, at five o'clock P. M., judgment of restitution was rendered in favor of *Towle* and against Smith, in said action. A writ of restitution was issued the same day, commanding the officer to cause said Smith to be immediately removed from the premises, etc. Between half-past five and six o'clock, P. M., of that day, the writ was put into the hands of *Thatcher*, one of the defendants herein, to be executed by him as under-sheriff ; and he proceeded to remove from the premises *Andrea*, the plaintiff herein, who had been occupying them, with his family, since the 15th of that month. This action was brought against *Thatcher* and some of the persons who aided him in removing *Andrea's* goods from the premises, to recover damages against

them for ejecting plaintiff from said premises, converting a gold watch belonging to him, and alleged to have been then in the house, and wrongfully throwing into the street, injuring and breaking various articles of furniture. The defendants justify under the writ of restitution, and allege that *Andrea* was let into possession by William Smith, and, before being so let into possession, was notified by *Towle* that said action by the latter against Smith was pending.

The evidence as to the amount of damage done to the property, and as to the manner in which the writ was executed, need not be stated. The general effect of it as to the latter point is stated in the opinion. Plaintiff's evidence tended to show that he took possession of the premises under a lease purporting to be executed by one F. H. Smith, by William Smith, as his agent, dated October 18, 1867; that he had taken this lease before he was notified of the suit by *Towle* against William Smith, but entered after receiving such notice; and that Willian Smith had authority to lease the lands of F. H. Smith in said county. This evidence was objected to, because there was no proof of title in F. H. Smith.

The court instructed the jury, in substance, that if defendants, or those who assisted them, abused the authority under which they entered, and committed acts not warranted by the writ, defendants were trespassers from the beginning; that they were bound to exercise ordinary care in removing the goods, and were liable for damages resulting from the want of care; that if they abused the process and acted in a manner tending to vex, harass or insult, or injure the feelings of the plaintiff, the jury might give exemplary damages; that if any of plaintiff's goods were lost or stolen while defendants and their assistants were removing them, through want of ordinary care on defendant's part, they were liable for such goods; that in determining whether defendants abused the power, the jury

might consider the manner in which the goods were handled ; whether any of them were willfully or carelessly broken or thrown out of the window, or thrown into the mud ; the crowd or number of persons who were engaged in removing the goods ; the length of time employed ; the manner in which they acted, and whether plaintiff offered to remove his own goods ; and that if plaintiff entered into and held possession of the premises described in the complaint, under any other person than William Smith, then defendants were trespassers. The court refused instructions asked by defendants as follows : (3) That if the writ of restitution authorized *Thatcher* to eject plaintiff, he was authorized to employ the other defendants, and if he did employ them to assist, plaintiff could not recover against any of the defendants, unless *Thatcher* exceeded the authority given him by law, although some of plaintiff's property was injured in the removal. (4) That there was no evidence that *Thatcher* exceeded his authority. (6) That if *Thatcher* was authorized to enter upon the premises, and remove plaintiff and his property, and employed the other defendants to assist, then, unless he exceeded his authority, of which there was no evidence, plaintiff could not recover against any of the defendants for any injury done by the different defendants without *Thatcher's* assent. (9) That if one having a legal right of entry on land, enters by force, he is not liable to an action of trespass for damages at the suit of the person who has no right and is turned out of possession. (10) That if plaintiff entered into possession by permission of William Smith, after the action of forcible entry was commenced against him by *Towle*, and with notice of the pendency of that action, and *Thatcher* removed plaintiff and his property under that judgment and writ of restitution thereon, and employed the other defendants, then defendants were not liable. Defendants also asked the court to instruct the jury, that exemplary damages could not be allowed unless the act

causing the injury was willfully done, or there was shown a deliberate and positive intention to injure, or a reckless disregard of the safety of persons or property. The court modified this instruction by adding, "or unless the proceedings were conducted in a manner tending to vex, harass, insult or injure the feelings of the plaintiff." The court also modified the second and fifth instructions asked for defendant, in the manner stated in the opinion.

Verdict for plaintiff for $185.78 "damages in furniture," and for $200 as exemplary damages, which the court recorded as a verdict for $385.78. Motion for a new trial denied; and from a judgment on the verdict, defendants appealed.

*Elbridge Smith* for appellants:

1. The jury were not warranted in finding exemplary damages, there being no proof of bad faith, wanton injury or total disregard of the safety of persons or property. 3 Wis. 424; 7 id. 465; 20 id. 358. 2. Removing the goods carelessly, so that some were damaged or lost, is not such an abuse of authority as to make defendants trespassers *ab initio*. *Adams v. Rivers*, 11 Barb. 390; *Hale v. Clark*, 19 Wend. 498; *Gates v. Lounsbury*, 20 Johns. 427; 2 Greenl. Ev. §§ 273, 634; *Butler v. Kent*, 19 Johns. 223; *Ropps v. Barker*, 4 Pick. 239. 3. The court erred in modifying the first, third and fifth instructions. Ch. 101, Laws of 1868.

*Felker & Weisbrod*, for respondent.

DIXON, C. J. There was no error in striking out the words "by permission of," and inserting in their place the words "under and by virtue of authority from," in the second and fifth instructions asked by counsel for the defendants. The idea of counsel in drawing the instructions no doubt was, that, in order to render the plaintiff, *Andrea*, liable to removal by virtue of the process in the forcible entry action against Smith, the jury must find that *Andrea* entered under Smith — that he

was Smith's tenant or representative. That idea was more clearly expressed by the words substituted by the court, than by those employed by counsel, which possibly might be susceptible of a different construction; and if so, the instructions as asked would have been erroneous. If *Andrea* did not enter under Smith, and by virtue of authority from him, and with notice of the pendency of the forcible entry action, he was not subject to removal by virtue of the process in that action.

The question then arises, where instructions are thus correctly modified and given, whether the judgment must be reversed under the provisions of chapter 101, Laws of 1868. It would be very strange if such were the law, yet if the statute so declared we should have to give effect to its provisions. The act declares that if the judge shall give any charge to a jury, or make any comments upon the law or facts, without the same being reduced to writing before it is given, any judgment which shall be rendered upon the verdict of such jury shall be reversed upon appeal or writ of error to the supreme court, upon the fact appearing; provided that a charge in writing may be waived by counsel at the time of the commencement of the trial. But to the proviso that the judge shall give each instruction asked by counsel on the trial of a cause to the jury, without change or modification, the same as asked, or shall refuse each in full, no such consequence for a failure to comply with it is attached. If the legislature had intended that any such consequence should follow a mere modification of a written instruction, whether right or wrong, as that the judgment should be absolutely reversed, no doubt such intention would have been clearly expressed by the act. It is a statute in derogation of the common law, and which, in providing that a judgment in itself correct, and by which justice has been done between the parties, shall be reversed because the judge failed to reduce his charge to writing before giving it to the jury,

is almost penal in its character, visiitng the successful party with the loss of his judgment and a bill of costs as the result of a technical failure or mistake on the part of the judge, for which such party was not responsible, and which caused no actual damage or injury to the opposite party. We do not think this provision should be extended beyond its strict and literal import, and are therefore of opinion that the error of the judge in modifying the instructions is not one for which the judgment should be reversed.

As to the rulings of the court in refusing to give the third, fourth, sixth, ninth and tenth instructions asked for the defendants, and in giving those asked for the plaintiff, we can discover no error in them for which the verdict ought to be set aside. The instructions asked on both sides were very general as to what would constitute an abuse of legal process, or an excess of authority on the part of an officer executing a writ. The conduct of the officer which would amount to such abuse or excess, was not specifically defined. In *Taylor v. Jones* (42 N. H. 25), it was held that there must be such a complete departure from the line of duty — such an improper and illegal exercise of the authority to the prejudice of another — such an active and willful wrong perpetrated — as will warrant the conclusion that its perpetrator intended from the first to do wrong, and to use his legal authority as a cover to his illegal conduct. And in *Fullom v. Stearnes* (30 Vt. 453), it is said that the jury should find that the officer acted willfully, rashly, maliciously or wantonly. But upon the facts in this case, we think there is no reason to apprehend that the jury were misled, or made any mistake, or could have made any, for want of more specific instructions upon this point. The conduct of the officer was grossly reprehensible and improper, and such as admitted of no excuse or justification. The removal of the plaintiff and his family of small children from the house was attended with circumstances of great outrage and

aggravation. The acts of the officer, and those of the riotous crowd of men he brought with him, were rude, hasty and insolent. Within one hour after the rendition of judgment in the forcible entry action, and with no time or opportunity given to the plaintiff to remove his family or provide for their protection, he and they were turned into the street in the night-time, at an inclement season of the year, and their furniture, clothing and goods, not lost or destroyed, were thrown, damaged and broken, out into the mud. If not himself actuated by malice toward the plaintiff and his family, then certainly the officer must have been a willing instrument in the hands of the plaintiff in the forcible entry action, under the guise of legal process, to execute his malicious purposes, which was far worse. Under these circumstances, even if there were some errors or mistakes in the instructions, we would be inclined to say, as was said by the court in a similar case (*Burton v. Calaway*, 20 Ind. R. 469), that the verdict and judgment are so clearly right upon the evidence, that we think it immaterial whether the instructions were strictly correct or otherwise.

*By the Court.* — The judgment below is affirmed, with costs.