HATFIELD et al. v. KING.

(Circuit Court, N. D. West Virginia. May 17, 1904.)

1. CONTEMPT—ATTORNEYS—PRESENTING FICTITIOUS CASE.

Evidence *held* insufficient to sustain charges of contempt of court against attorneys, in that they acted in collusion as representing the respective parties to a suit, to impose upon the court a feigned and fictitious case, in the sole interest of the complainant therein.

On Motion for a Rule for Contempt against Henry C. Flesher and Maynard F. Stiles.

Campbell, Holt & Campbell, W. P. Hubbard, and Holmes Conrad, for complainants.

Maynard F. Stiles, for defendant.

JACKSON, District Judge. In this case the Supreme Court of the United States entered its order at the October term, 1901, to set aside the decree of the Circuit Court of the United States for the District of West Virginia, which was entered by the judge of this court who at that time presided in that district, and also in its decree directed that the case be referred to the judge of this court "to make a full investigation in such manner as shall seem to it best, of the various charges

¶ 1. Liability of attorneys for contempt, see note to Anderson v. Comptois, 48 C. C. A. 7.

of misconduct presented with the motions filed in that court, and to take such other action thereon as justice may require," as appears from the mandate of the Supreme Court, filed in this court on the 2d day of January, 1903. 22 Sup. Ct. 477, 46 L. Ed. 481. On the 3d day of September, 1903, the case was submitted to this court upon the petitions and affidavits filed before the Supreme Court, and there being no additional evidence offered by either party, the only inquiry that this court has to deal with under the decree of the Supreme Court, is to determine whether or not the court, at the time of the hearing and submission of the case of King v. Hatfield and Rutherford (C. C.) 130 Fed. 564, was imposed upon by counsel in the submission of a feigned or fictitious case. When I read the order I felt greatly surprised; for, in the course of a long judicial life, I do not recall a single instance in which any of the members of my bar ever attempted to impose upon the court a feigned or fictitious case. I could not well conceive how such a charge could have been preferred against two gentlemen of the bar, both of whom I have known as practitioners in my court. Mr. Stiles I have known for nearly a period of 10 years, and Mr. Flesher for over 20 years. Mr. Flesher was a practicing lawyer before the war, and lived in Jackson county, at which time the judge of this court practiced in that county, and formed the acquaintance of Mr. Flesher, which acquaintance has continued from that time to this day. Mr. Flesher was appointed by this court, many years ago, a United States Commissioner. In his relations to this court, either in its presence or in his official character as commissioner, I have never at any time heard his reputation and character questioned as a member of the bar, or in any other respect. As to Mr. Stiles, I became acquainted with him after the suits were instituted in the United States court, in the name of Henry C. King, for the recovery of certain lands that he had purchased of John V. De Moyne, grantee of the estate of James Swann. At the time of the purchase of this property, and up to that time, it has been, in various shapes and forms, the subject of litigation in the courts of the United States for the District of West Virginia; the cases having been transferred in 1871 from the circuit court of Kanawha county, where they were then pending, to the United States court, involving what were then known as the "Swann Lands" in which portions of the 500,000-acre grant now claimed by King was the subject of litigation. Since that time these cases have been pending in that court, and I have frequently made orders in the cases affecting these lands. In the case of Dumas et al. v. Monsignon et al., the court appointed William E. Chilton, who made an affidavit in this case, as special commissioner to make conveyance of some portion of the 500,-000-acre grant under which King claims. It will be observed that this court was more or less familiar with the history of these lands since the litigation was transferred to this court. In fact, the court was more or less familiar with them before that time. I refer to these facts merely to show that, when the case was called upon the docket to be heard upon the bill so much complained of, the court was not altogether unfamiliar with the history of these lands.

It was and is now the custom and habit of the court to notify the bar to be present at the time of the calling of the docket, and

of the bar to be in attendance upon the court at such times. It appears from the records of the court that when this case was called a demurrer to the bill was filed on the 8th day of June, 1899, at which times Mr. Stiles, representing the plaintiff, and Mr. Flesher, speaking for the defendant, asked that a time be fixed for the hearing of the case, as both sides were anxious to have the case heard and disposed of. It was heard during the term upon an oral argument, with leave to file briefs. I particularly remember that Mr. Flesher relied upon the briefs filed in the case of King v. Mullins, 18 Sup. Ct. 925, 43 L. Ed. 214, pending in this court, in support of the rights of his clients, which were furnished to the court. Upon an examination of this case submitted to the court, and the case of King v. Mullins, it will be perceived that the questions in the two cases are somewhat different. At the time of the submission of the cases, I remarked to counsel that the question involved in this case was a very grave and important one, and, while it was one upon which I had very strong convictions, still I would take the case under consideration, and decide it as soon as I conveniently could. I held the case under consideration for nearly a year, and finally, at the May term of the court, I entered an order on the 16th day of May overruling the demurrer, at which time, when I announced my opinion overruling the demurrer, there were quite a number of the members of the bar present, when some member of the bar, whom I do not now recall, addressed the court in regard to the effect of its decision; and the court stated at the time that it had a very decided opinion upon the case, and, if there was any disposition to appeal the case, that it would reserve the right to file a written opinion, which I subsequently did. My recollection of what occurred at that time is sustained by the affidavit of Mr. E. L. Buttrick.

This is the history of the case as it appeared before the court, and I certainly never supposed that there was any effort upon the part of counsel to foist upon the court a fictitious case. This much of the history of the case, I think proper to state, is due to the court before I consider the affidavits upon which the order of the Supreme Court is founded.

The only question that this court has to deal with is whether Stiles and Flesher have been guilty of a contempt of the court, in attempting to impose upon the court the hearing and trial of a feigned or fictitious case. To support this contention, affidavits of John A. Sheppard, William E. Chilton, W. R. Thompson, Nancy E. Browning (née Hatfield), Sarah D. Hatfield, A. M. Toler, J. M. Toler, Ferrell Hatfield, Claude L. Gaujot, and Amanda Claypool, and several exhibits, are filed. In reply to these affidavits, the respondents, Stiles and Flesher, file their affidavits, the affidavits of Henry C. King, H. K. Shumate, V. A. Wilder, and E. L. Buttrick, and, in connection therewith, various exhibits—especially a letter of Sarah D. Hatfield, signed "S. D. Hatfield," dated February 27, 1901 (one of the defendants in this case). While the evidence contained in the affidavits in support of the petitioners is not of a specific, but of a general, character, as to the acts which, it is claimed, constitute the contempt upon which the rules are predicated in this case, the affidavits of both Stiles and Flesher deny the charge of any understanding, agreement, or conspiracy between them to make

a case for the consideration of the court, which was to be considered as a feigned or moot case, merely for the extraction of the opinion of this court and the Supreme Court. When the bill of the plaintiff is read in this case, it must be obvious to the most casual observer that it raises a grave and serious question of law, which was frankly stated at the time in the argument of counsel, based upon facts some of which were known to the court, and others which were claimed by the plaintiff's counsel to exist at the time of the submission of the case. The court was led to believe that they were anxious to dispose of the question of law raised by the demurrer as to the forfeiture of the lands described in the bill. The counsel for the defendant, relying upon the demurrer, at no time waived any of the rights of the parties he represented; stating that he was anxious to have the question of the forfeiture of the lands settled, for, if it was settled in his favor, it would end the litigation.

The argument in this case took place in the presence of quite a number of the bar, and was at the time, as I subsequently learned, the subject of a good deal of earnest discussion.

I do not at this time recall whether the attention of the court was called to the fact that there had been no service of process on the defendant, but, if it had been called to the attention of the court, it would have merely remarked that, if counsel who claimed to represent the defendant chose to appear in the case and waive process, he had a right to do so. And such is the universal rule in equity courts, where amended and cross bills have been filed. Recognizing this rule of practice, I did not hesitate to recognize Mr. Flesher when he stated to the court that he represented the defendant, and would waive process and appear. The only object of the process is to get the parties before the court, and, if a party appears by his attorney and waives process, the service of the process would accomplish nothing more. The fact is, as I have stated, that I do not recall what occurred in reference to the question of process; but, recognizing, as I always have done, Mr. Flesher as a lawyer of character and ability, I would not hesitate for a moment to recognize his right to appear. Such has been the uniform practice in the courts over which I preside. The practice of the courts in this country in regard to the appearance of attorneys is well stated in the case of Osborn v. Bank, 9 Wheat. 739, 6 L. Ed. 204. In that case Chief Justice Marshall uses the following language:

"Certain gentlemen, first licensed by the government, are admitted by the order of the court to stand at the bar, with a general capacity to represent all the suitors in the court. The appearance of any of these gentlemen in a case has always been received as evidence of his authority, and no additional evidence, so far as we are informed, has ever been required."

The rule stated by the Chief Justice has always governed the practice in my courts, acting upon the presumption that an attorney appearing in court to represent a party has authority to do so. A multitude of authorities showing this to be the general practice both in federal and state courts could be cited, affirming the rule as laid down by Chief Justice Marshall, but it is not deemed necessary. In the very late case Bonnifield et al. v. Thorp (D. C.) 71 Fed. 924, this rule was the subject of

consideration, and the court cited a large number of authorities where the right of an attorney to appear for a party was questioned, and held that:

"The presumption is that an attorney appearing in court for a party has authority to do so, and, where the want of authority is questioned, the burden of proof is on the party attacking, and such want must be established by positive proof."

In this case it is to be observed that at the time Mr. Flesher appeared to the case no one questioned his authority, nor was there any intimation or suggestion to the court that he had not the right to appear for over a year after his appearance.

The court recalls the fact that in the case of King v. Altizer, Mullin et al., 18 Sup. Ct. 925, 43 L. Ed. 214, which was an action to recover a large tract of land, Mrs. Hatfield and Mrs. Rutherford were both defendants in the cause, and appeared in open court when the case was called for trial. My recollection is that Judge Ferguson, who also had been employed to represent them, got up and withdrew from the case, for the reason, as he stated, that he understood that Mr. Flesher had entered into a stipulation, as counsel for the defendants Sarah B. Hatfield and Nancy Rutherford, to sever from the other codefendants on the trial of the action. He stated that he had not been consulted by his clients, nor by Mr. Flesher, which was his reason for withdrawing from the case as counsel. Both Mrs. Hatfield and Mrs. Rutherford were present, and did not at that time repudiate Mr. Flesher as their counsel. This occurred on the 15th day of October, 1895, when the action of ejectment was called for trial. From that day up to the time that Mr. Flesher appeared and filed his demurrer to the bill in the case against Mrs. Hatfield and Mrs. Rutherford, the court always recognized Mr. Flesher as their counsel.

This much I have felt is due to the court to state its recollection of the history of the case, which is possibly the reason why the Supreme Court referred this matter to me, as being the proper person to consider the charges. In looking into the evidence in support of these charges, much of it that is filed I do not regard as throwing any light upon the question of what I shall call the contempt of the court in an effort of counsel to impose upon it. The first affidavit filed by the petitioners is that of Mr. John A. Sheppard, which throws little or no light upon the question of contempt. His affidavit does not disclose any matter of fact that would tend to throw any light upon that question. He does not speak from a personal knowledge, but only repeats in his affidavit what he claims that he got from Mrs. Hatfield. As Mrs. Hatfield's affidavit is filed in the case, which is primary evidence, then, so far as Mr. Sheppard's affidavit states what Mrs. Hatfield told him, it is hearsay. I shall consider only the statement of Mrs. Hatfield as stated in her affidavit, and not as repeated by Mr. Sheppard, who appears not to have been interested directly in the lands in controversy, but indirectly, as representing other parties whose interests might be affected by the decision in this case. Mr. Sheppard states that Mrs. Hatfield admitted that she knew of the existence of the case of King against herself, but contended that she had not lost her land. In this connection it is to be remarked that none of the parties who filed affidavits in

this case were counsel for Mrs. Hatfield. The court must therefore conclude that not being of counsel for Mrs. Hatfield was the reason why they paid no attention to the case until after they had heard of the decision of the court in her case. The court entertaining the belief that Mr. Flesher was their counsel, when he arose and addressed the court it did not hesitate to recognize him as counsel in the case. I have carefully considered the affidavits filed in support of the charges contained in the petition of Stewart Wood and others for rules against Henry C. Flesher and Maynard F. Stiles, upon which the rules for contempt were awarded, and which are relied on to show that there was a collusion between Flesher and Stiles to present to the court for its consideration a fictitious case, and to practice a fraud upon it. There is much in the affidavits which might tend to arouse some suspicion of irregularity, but there is an entire absence of any specific proof that tends to sustain the charge of a conspiracy upon the part of Flesher and Stiles to present to the court a moot case, in order to extract an opinion from the court upon the question raised by the pleadings. As we have said, the affidavit of Mr. Sheppard, which undertakes to give what occurred between him and Mrs. Hatfield, and which the court supposes is largely relied upon to sustain the charge of collusion and fraud between Flesher and Stiles, fails to state any fact from his personal knowledge, and this criticism applies with equal force to all of the affidavits in support of the alleged charges. At the time when the case was under consideration before the court, it was frankly and freely stated on both sides that it was the desire of counsel to get an early hearing of the case, without the delay which necessarily arises from long litigation in an action of ejectment. There was but one question before the court, and that was a constitutional one, and, if the court held with the defendant upon that question, then it was conceded that the trial of the action at law would be unnecessary; but, if the court held with the plaintiff, then the right of the defendant to set up any other defense that might be relied upon in the case was not in any wise abridged. There is no specific evidence to be found in any of the affidavits in this case which fixes the imputation of fraud and collusion between the counsel who appeared in the case. The facts stated in the affidavits of the petitioners, so far as they relate to this charge, are denied by both Stiles and Flesher in their affidavits, and, to my mind, successfully dispose of the question of fraud and collusion. I have to some extent relied upon my personal recollection of Mr. Flesher's connection with the case, which recollection is sustained by the records of the court, but it is unnecessary for the court to rely upon its recollection. Mr. Flesher's affidavit disclosed his entire connection as counsel in the case, and he produced a letter from Mrs. Hatfield of the date of February 27, 1901, in which she recognized him as her counsel, and that, too, after it appears that certain interested parties had visited her and tried to induce her to employ other counsel. It is very apparent to my mind, from the evidence in this case, that the fears of Mrs. Hatfield had, to a great extent, been worked upon, and that, had she been left alone and not been interfered with, possibly the controversy that has now arisen would never have transpired. Be that as it may, in the letter just referred to she recognizes Mr. Flesher

as her counsel, and she is bound by his actions. Many courts have held that, after counsel have appeared in a case, every step taken in the case, so long as the relation of counsel and client exists, must be taken by counsel, and is binding upon the client. In looking over these affidavits, it does not appear that any improper motive could have been attributed to Mr. Flesher in taking the course he did. Both Flesher and Stiles have filed their affidavits denying in most positive terms the charge of collusion, or any attempt to impose upon the court. The statements of these gentlemen, both long known to the court, are entitled to full credit, and must be accepted by the court as conclusive of their innocence on the charge of contempt and collusion, unless their evidence is overthrown by evidence so conclusive that the court would feel constrained to sustain the charge. The burden of proof is upon the petitioners to make good the charge. Rutledge v. Waldo et al. (C. C.) 94 Fed. 265. The affidavits of both Stiles and Flesher show that controversy and issue as made by the pleadings to be real, and not fictitious, and that it was in no sense a legal fraud to seek, under the circumstances, an early decision as to the forfeiture of the land in controversy, especially when it might save the great expense incident to a trial in ejectment for the recovery of the land.

The case we have under consideration resembles very closely the similar one of Robinson v. Lee (C. C.) 122 Fed. 1012, in which Judge Simonton, of this circuit, held that where it appears "that the controversy is a real one, and when the defendant swore that it was, then it was not in any sense a legal fraud to form a purpose in order that there might be a judicial determination of the validity of the question at issue." This rule, as laid down by that eminent jurist, seems to apply with much force to this case. And the application of this principle to the case under consideration will exonerate both Mr. Stiles and Mr. Flesher from any improper professional conduct in the case.

I reach the conclusion that the evidence fails in every essential element to sustain the grave charge made against the respondents. For this reason, the court is of the opinion that the motion for rules for contempt against Flesher and Stiles should be dismissed.