**SNYDER v. HART et al.**

No. 6346.

United States Court of Appeals for the
District of Columbia.

Argued March 5, 1935.

Decided May 13, 1935.

Leslie C. Garnett and John J. Wilson, both of Washington, D. C., for plaintiff in error.

Al Philip Kane, of Washington, D. C., for defendants in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This case comes here by writ of error to the Municipal Court to review a judgment entered June 22, 1934, in favor of the defendants in error and against the plaintiff in error, in the amount of $250, upon the verdict of a jury.

Defendants in error filed suit in that court against George A. Lescallett, Florence R. Lescallett, N. E. Ryon Company, Inc., and Edgar C. Snyder, the United States marshal for the District of Columbia, plaintiff in error, to recover damages, in the amount of $985, alleged to have been done to their property in the course of execution of a writ of restitution.

Mrs. Lescallett was not served with process; demurrers were sustained on behalf of Lescallett and Ryon Company; the action was subsequently dismissed as to them; and the demurrer of plaintiff in error was overruled.

The following facts were brought out at the trial:

The defendants in error, Leo J. and Helen V. Hart, husband and wife, were living in premises at 619 M Street N. E., in Washington City, under a lease between Helen Hart and N. E. Ryon Company, Inc., agent for the landowners, George A. and Florence R. Lescallett. Being in arrears in rent, a judgment for possession of the premises in question was entered against Helen Hart in favor of N. E. Ryon Company, Inc., on July 31, 1933, in Municipal Court Landlord and Tenant Case No. 549178. Both defendants in error testified they knew this judgment had been entered, but both denied knowledge of the issuance of the writ of restitution.

On August 8, 1933, a writ of restitution was lawfully issued on this judgment, commanding the marshal to restore possession of the premises to Ryon Company within ten days (exclusive of Sundays and legal holidays). On the following day, August 9th, the marshal addressed a letter to Mrs. Hart advising her that the writ would be executed the next day, August 10th, at 10 o'clock. This notice was not seen by either of the defendants in error before the execution of the writ by the marshal, Mrs. Hart having spent the night of August 9th away from home with her children, and Mr. Hart having left the house for his work at 6 o'clock on the morning of the 10th.

The notice was found by the marshal unopened in the mail box at 619 M street when he arrived to execute the writ on August 10th at about 9:45 a. m. Neither of the defendants in error, nor any one else, was then at home, but an employee of the Ryon Company unlocked the door of the house, and the eviction began by removal of the furniture, furnishings, and other effects found in the house to the public sidewalk in front thereof, which occupied about two hours, being completed about noon.

The damage suffered by the defendants in error, with certain negligible exceptions, was caused by mist and rain falling on their goods while being removed or while lying on the sidewalk thereafter. The issue is much beclouded by a remarkable conflict of testimony touching weather conditions prevailing at and about the time of the eviction.

Defendants in error produced three neighbors as eyewitnesses, all of whom testified that rain was falling before the eviction was completed; two testified that it was raining hard; and two testified that it was so cloudy early in the morning that any one could see it was about to rain.

Plaintiff in error called two other neighbors as eyewitnesses, both of them testifying that it was cloudy and looked like rain, but that no rain fell during the eviction, although it began shortly thereafter. Plaintiff in error also called two deputy marshals who assisted in the eviction, one of whom testified that it was clear and hot when the eviction began at 9:45 a. m.; that it was still clear and hot at 11:15 a. m. when this witness departed; and that it continued sunny until 1 o'clock. The other deputy testified that the weather was so clear and so hot between 9:45 and 11:45 that he twice moved his automobile out of the sun; that no rain fell during that time; but that he noticed at 1 o'clock, after returning to the marshal's office, that it had commenced to rain.

Plaintiff in error also called an employee of the Ryon Company, who testified that there was no indication at all of rain that morning, and that no rain fell during the eviction. This witness further testified that he returned to the house about 4:30 p. m.; that some one was then in the house; and that the furniture had not been removed at that time although it was then raining.

Defendants in error offered in evidence United States Government weather reports showing that on August 10th there was 1 per cent. of normal sunshine; that it was cloudy from 9 a. m. to 2 p. m.; that there was some rain from 12 noon to 1 p. m., but too small to measure; and that it rained continuously from 1 p. m. to 8 p. m., 91/100 of an inch falling between 2 o'clock and 8.

Mrs. Hart testified that she first learned of the eviction at some time after noon, when somebody called her by telephone; that she reached the premises at 1:30 p. m., when it was raining hard; that she immediately endeavored to procure a drayman to remove her goods from the sidewalk; that some time after 2 o'clock she succeeded in procuring a drayman, who completed the removal of her goods from the sidewalk at about 5 o'clock, at which time it was still raining. And her testimony does not seem to be controverted.

The trial court charged the jury, in substance, that in removing the goods belonging to defendants in error, the marshal owed a duty of reasonable care in their protection, and that should the jury find that the marshal did not exercise such care, or that through negligence he caused them to be unnecessarily damaged, a verdict for the amount of such damage should be returned.

The verdict of the jury, in view of the instructions of the court, is inconsistent with any other interpretation of the facts than that the goods were damaged by rain to the extent of $250, through the negligence of the marshal in removing them to the sidewalk at a time when damage by rain was actually occurring or reasonably to be expected.

The appeal thus raises the question whether a United States marshal is liable for acts performed in the execution of a writ of restitution when he knew, or in the exercise of due care should have known, that those acts were reasonably likely to cause damage to the goods of the evicted tenant; when he knew that such notice of the eviction as he had attempted to give had not been received; when no interested party was at hand to protect the goods from damage or theft; and when he still had more than a week to perform his duty under his writ.

Although the question of the liability of an officer for damage negligently done in the execution of such a process seems never to have been directly presented to the Supreme Court, that court has taken occasion to express approval of holding a marshal to strict accountability in such cases.

In Life and Fire Insurance Co. of N. Y. v. Adams, 9 Pet. 573, at page 603, 9 L. Ed. 234, the court said: "It is the duty of the marshal, to execute all proc-

ess which may be placed in his hands; but he performs this duty at his peril, and under the guidance of law. He must, of course, exercise some judgment in its performance. Should he fail to obey the exigit of the writ, without a legal excuse; or should he, in obeying its letter, violate the rights of others, he is liable to the action of the injured party."

And again in South v. State of Maryland to Use of Pottle, 18 How. 396, at page 402, 15 L. Ed. 433, the court said: "It is an undisputed principle of the common law, that for a breach of a public duty, an officer is punishable by indictment; but where he acts ministerially, and is bound to render certain services to individuals, for a compensation in fees or salary, he is liable for acts of misfeasance or non-feasance to the party who is injured by them."

Numerous cases in state courts have affirmed the principle that an overstaying tenant has a legally protected interest as to the security both of his person and his goods, which may not be unreasonably invaded either by the landlord or by the marshal without incurring liability. Andrea v. Thatcher, 24 Wis. 471; Miller v. White, 80 Ill. 580; Murray v. Mace, 41 Neb. 60, 59 N. W. 387, 43 Am. St. Rep. 664; State v. Devitt, 107 Mo. 573, 17 S. W. 900, 28 Am. St. Rep. 440; Ahearn v. Connell, 72 N. H. 238, 56 A. 189; Fullam v. Stearns, 30 Vt. 443; Sandberg v. Borstadt, 48 Colo. 96, 109 P. 419; Chetteville v. Grant, 212 Mass. 17, 98 N. E. 616.

We think that a marshal executing a writ of restitution should be liable for damage caused by rain or other natural causes, as well as by his own breakage, if it comes to the goods by reason of his negligent conduct, or an undue exposure reasonably foreseeable. The marshal's liability in such a case is a necessary safeguard for the person and the goods of a tenant against wanton, oppressive, or negligent conduct of the marshal or his men, and it may always be cut off by the willful nonaction or contributory negligence of the tenant.

In this case if the marshal had given reasonable notice of the execution of the writ, the tenant could have arranged to carry the goods to a place of shelter immediately upon their removal by the marshal, and the failure of the tenant to do so would protect the marshal from liability for damage occurring after removal.

Here the marshal had ten days within which to perform a duty that he accomplished in two hours, and the obvious purpose of the writ in allowing him a leeway so adequate, yet so limited, was to provide for the reasonable protection of all parties in interest. If he saw fit to proceed on the second day of his ten, when he knew that the short notice he had attempted to give had failed, and when no one representing the tenant or interested in the goods was present, he proceeded at his peril in respect of any negligent or unnecessary damage to the goods.

While the judgment for possession against the tenant carries a clear intimation that it is time for him to move, and to protect his goods, it is not notice of a writ of restitution not yet issued, or that such a writ will be executed at a time certain, regardless of his presence or absence, or the conditions of the weather. The necessities of labor, or other exigencies of life, may require his temporary absence from his abode, and it is to insure reasonable discretion in handling such difficulties and possibilities that the marshal is allowed many days for the performance of a duty easily done in a few hours.

Here the marshal admits that he would be liable for negligence in the actual handling of the tenant's goods, but contends that there is a legal difference between damage by breakage in the course of removal and damage by rain occurring after the removal, and that his liability ends when he places the goods on the sidewalk and departs without damage by negligent breakage. To support this contention the plaintiff in error cites Williams v. District of Columbia, 22 App. D. C. 471, where the marshal removed a tenant's goods to the sidewalk, where they remained for three days. The marshal was arrested for unlawfully obstructing the sidewalk in violation of a municipal ordinance, and was convicted in the police court, whose judgment was reversed here.

The cases are clearly distinguishable; for the question in that case was not damage to the goods, but solely as to the legal liability for a conceded obstruction to the sidewalk by leaving the goods there for an unreasonable time.

In this case the marshal's men consumed two hours in removing the goods, finishing about noon; while Mrs. Hart found a drayman some time after 2 o'clock, who had removed them all by 5 o'clock, but only after a third person had telephoned her of the eviction, so that no question of unreasonable delay appears in this case.

In the Williams Case the marshal had properly and lawfully placed the goods upon the sidewalk. Having done so, he had discharged his duty, and it thereafter became the duty of the tenant to remove the goods within a reasonable time. The tenant's failure to do this constituted the obstruction.

However, in the present case the thing complained of is the very act of placing the goods on the sidewalk at a time when damage by rain was reasonably likely or actually occurring. Thus the premise of the Williams Case—that the act of the marshal in placing the goods upon the sidewalk was properly performed—is not present here.

The power of the marshal to cut off his liability for damage occurring after removal by giving reasonable notice of his intention to evict, or by making reasonable effort to give such notice, affords ample protection to him, even in the hypothetical case presented in his brief, where snow fell continuously throughout the life of his writ.

The writ in this case allowed him the entire middle third of August for its execution, and even with interruption of his activities by snow, if he had given the tenant reasonable notice of his coming, or had made reasonable effort to do so, he would have enabled her to preserve her goods, while preserving himself from the liability which the judgment has brought upon him.

There is no statutory provision in the District governing the manner in which the marshal shall execute the writ of restitution. Probably the only references to the writ are contained in the rules of the Supreme Court of the District and in the forms approved by the Municipal Court in its rules. The matter is of so much importance to so many persons, both landlords and tenants, that a fixed legislative rule on the subject might be of advantage to the community over the present uncertain procedure which leaves it to a jury to find in each contested case whether or not the marshal has acted reasonably in the premises.

We are of opinion that no error occurred in the case, and the judgment is therefore affirmed.

Affirmed.