## BOOTH et al. v. FLETCHER.
### No. 6950.

United States Court of Appeals for the
District of Columbia.
Decided Dec. 19, 1938.

Motion to Expunge Opinion Denied
Jan. 1, 1939.

Leslie C. Garnett and H. L. Underwood, both of Washington, D. C., for appellants.

Edmond C. Fletcher, of Washington, D. C., pro se.

Before STEPHENS, MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellee Fletcher declared against appellants, in the court below, alleging that

they conspired to injure him; that they acted in pursuance of the alleged conspiracy to procure, and did procure, his disbarment as an attorney in the Supreme Court of the District of Columbia (now the District Court of the United States for the District of Columbia), and in the Court of Claims of the United States; and that as a result thereof he suffered great damage. The declaration alleged that Appellant Booth was Chief Justice of the Court of Claims of the United States, Appellants Williams, Whaley, Green and Littleton were judges of the same court; Appellants Wheat and Adkins were Chief Justice and Justice, respectively, of the District Court of the United States for the District of Columbia; but that each appellant named above was sued in his individual right. The declaration further alleged that Appellant Kleinschmidt was the assistant clerk in the Court of Claims; that Appellant Coflin was the assistant clerk in the Supreme Court of the District of Columbia. The declaration also revealed on its face that Appellants Craighill and Laws were members of the Committee on Grievances of the Supreme Court of the District of Columbia; and that Appellant Hart was Chief Clerk of the Court of Claims of the United States. The declaration does not reveal the identity of Appellant Edward K. Campbell, but we take judicial notice of the fact that he was, at the time of initiation of the present proceedings, the retired Chief Justice of the Court of Claims of the United States.

The specific acts complained of, and which appellee alleges appellants conspired to commit, were in substance as follows: (1) Appellant Campbell procured a copy of a report made by appellee to George S. Graham, Chairman of the Judiciary Committee of the House of Representatives, which report suggested, in the alternative, the impeachment of Appellant Booth or the abolition of the Court of Claims, and Appellant Campbell submitted the same to Appellants Booth, Williams, Whaley, Green and Littleton; (2) the Court of Claims promulgated a rule for the disbarment of members of its Bar; (3) Appellants Laws, Craighill and Myers delivered to Appellant Wheat a complaint against appellee, charging that appellee was guilty of malpractice, unethical and unprofessional conduct rendering him unfit to be a member of the bar, and recommending that the charges contained in the complaint be filed with the clerk of the court and that appellee be tried

thereon. This complaint was set out in the declaration and showed on its face that it was titled "In the Supreme Court of the District of Columbia holding a general term. Disbarment No." and that it was signed "Committee on Grievances of the Supreme Court of the District of Columbia, G. Bowdoin Craighill, Bolitha J. Laws, Members of said Committee"; (4) Appellant Wheat signed an order—which was also set out in the declaration—which order was titled "In the Supreme Court of the District of Columbia holding a general term Disbarment No. 51," and which directed that the charges submitted to the court by its Committee on Grievances be filed with the clerk of the court, that appellee be served with a copy of the charges and of the order, that he answer the charges and show cause why he should not be suspended or removed from his office as a member of the bar; (5) Appellant Kleinschmidt requested Appellant Coflin to notify the Court of Claims when appellee was finally disbarred from practice in the Supreme Court of the District of Columbia; (6) Appellant Adkins, at the request of Appellants Laws, Craighill and Myers signed an order—also set out in the declaration—which order was titled, "In the Supreme Court of the District of Columbia, holding a general term, Disbarment No. 51" and which ordered the disbarment of appellee; (7) Appellant Coflin struck the name of appellee from the roll of attorneys kept by the Supreme Court of the District of Columbia and mailed a copy of the order of disbarment to the Court of Claims of the United States; (8) Appellants Covington, McCarron and Miller reported, while in the office of Appellant Green, that appellee had been disbarred as an attorney by the Supreme Court of the District of Columbia and recommended that appellee should be disbarred by the Court of Claims of the United States; (9) Appellants Green, Littleton, Williams and Whaley signed an order, a copy of which was delivered by Appellant Green to Appellant Booth. This order was also set out in the declaration, and was titled, "In the matter of proceedings for the disbarment of Edmond C. Fletcher"; it ordered the disbarment of appellee as an attorney of the United States Court of Claims and was signed by Appellants Green, Littleton, Williams and Whaley as judges of that court; (10) Appellant Kleinschmidt struck appellee's name from the roll of attorneys of the Court of Claims; (11) Appellant Hart signed

and mailed to appellee a letter informing appellee that there was enclosed therewith a certified copy of the order of disbarment. This letter was set out in the declaration; it was written on the letterhead of the Clerk of the Court of Claims of the United States; it contained at its top the name and title of Appellant Hart, Chief Clerk, and the name and title of Appellant Kleinschmidt, Assistant Clerk, and was signed by Appellant Hart as Chief Clerk.

■■■ This court has judicial knowledge of the fact that the name of the Supreme Court of the District of Columbia, before which the proceeding in Disbarment No. 51 was commenced, and in which the order of disbarment of Appellee Fletcher was made, was changed by Act of Congress [1] to the District Court of the United States for the District of Columbia. It has judicial knowledge also of the fact that an appeal was taken to this court by appellee from the said order,[2] and that this court, in its opinion entered therein, affirmed the order of disbarment, saying of Appellee Fletcher: "His conduct deserves condemnation both in morals and law."[3]

Appellants demurred to the declaration —Wheat and Adkins, by their attorney Frank F. Nesbit, and the other appellants by James W. Morris, Assistant Attorney General, W. S. Ward, Attorney, Department of Justice, Leslie C. Garnett, United States Attorney, and H. L. Underwood, Assistant United States Attorney. Appellee moved for an order requiring Morris, Ward, Garnett and Underwood to produce and file their warrant of attorney and for an order striking from the files the demurrer filed by them. The record fails to reveal that any hearing was held upon these motions, but thereafter the lower court, in an order dated February 12, 1937, stated that upon consideration thereof, "it is ordered that said motions be, and the same are hereby each severally granted." We allowed a special appeal from this order.

■■ The challenge which was made by appellee in this case was directly of the power and authority of the Attorney General himself, as well as of his representatives. We take judicial notice of the fact that Attorneys Morris, Ward, Garnett and Underwood were officers of the Department of Justice.[4] The lower court was also charged with judicial knowledge of that fact.[5] The appearance which they made by way of demurrer disclosed that they appeared in that capacity.

■ It is not even a doubtful question whether the appearance of these officers was proper in the present case. The law provides (R.S. §§ 359, 367, 5 U.S.C.A. §§ 309, 316, 2 F.C.A. Title 5, §§ 309, 316):

"§ 359. * * * the Attorney General may, whenever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct

---

[1] Act of June 25, 1936, 49 Stat. 1921.

[2] A court may take judicial notice of, and give effect to, its own records in another but interrelated proceeding, as this was. Freshman v. Atkins, 269 U.S. 121, 124, 46 S.Ct. 41, 70 L.Ed. 193; United States v. California Co-operative Canneries, 279 U.S. 553, 555, 49 S.Ct. 423, 73 L.Ed. 838; National Fire Ins. Co. v. Thompson, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881; De Bearn v. Safe Deposit & Trust Company, 233 U.S. 24, 32, 34 S.Ct. 584, 586, 58 L.Ed. 833: "The court has the right to examine its own records and take judicial notice thereof in regard to proceedings formerly had therein by one of the parties to the proceedings now before it.'" Dimmick v. Tompkins, 194 U.S. 540, 548, 24 S.Ct. 780, 48 L.Ed. 1110, 1113. Louisville Trust Co. v. Cincinnati, 6 Cir., 76 F. 296, 318, certiorari denied, 164 U.S. 707, 17 S.Ct. 995, 41 L.Ed. 1183, cited with approval in Freshman v. Atkins, supra: "We see no difficulty in the circuit court taking judicial no-

tice of the pendency of another suit in the same court under which it had taken possession of the subject-matter of this suit." United States v. North American Oil Consolidated, 9 Cir., 264 F. 336, appeal dismissed 258 U.S. 633, 42 S.Ct. 315, 66 L.Ed. 802; Washington & Idaho R. R. v. Cœur D'Alene Ry. & Navigation Co., 160 U.S. 101, 16 S.Ct. 239, 40 L.Ed. 355; Aspen Mining & Smelting Co. v. Billings, 150 U.S. 31, 38, 14 S.Ct. 4, 37 L.Ed. 986. See generally, 5 Wigmore, Evidence (2d Ed. 1923) § 2579.

[3] Fletcher v. Laws, 62 App.D.C. 40, 42, 64 F.2d 163, 165.

[4] Keyser v. Hitz, 133 U.S. 138, 146, 10 S.Ct. 290, 33 L.Ed. 531; Roth v. Baldwin, 64 App.D.C. 90, 74 F.2d 1003, certiorari denied 295 U.S. 737, 55 S.Ct. 649, 79 L.Ed. 1684; Frischer & Co. v. Bakelite Corp., Cust. & Pat. App., 39 F.2d 247, certiorari denied 282 U.S. 852, 51 S.Ct. 29, 75 L.Ed. 755; Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, certiorari denied, 59 S.Ct. 146, 83 L.Ed. ——.

[5] Ibid.

680

the Solicitor General or any officer of the Department of Justice to do so.".

"§ 367. The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State, or to attend to any other interest of the United States."

■ In his affidavit appellee alleged "that this suit was brought by him against the said defendants in their individual capacity, and its subject-matter is of no concern to the Government of the United States; * * *" But the record reveals on its face the incorrectness of this contention. As to some of the appellants, the declaration did not even allege that they were sued in their individual capacities, and as to all of them, except Appellant Campbell, the record clearly reveals that they were sued on account of acts performed in their official capacities and for no other reason. By sustaining the demurrer interposed by Wheat and Adkins, who were joined with appellants as defendants in the declaration, the lower court indicated that it was aware of this fact. As the order striking the demurrer of appellants did not discriminate between them, it is obvious that if the appearance was proper as to any one of them the order was wrong.

■ The purpose of the rule which exempts public officers from the harassment of private suits for damages on account of the performance of their public duties, is, secondarily, for their protection, in order that its primary objective may be secured, i. e., a fearless administration of the law. The rationale of the rule was in its inception, and to a large extent has been in its application, that in each particular case the defendant was a judicial officer, or was engaged in a judicial determination, or was so closely associated with the judicial process as to make necessary his protection in order to protect the judicial process itself.[6]

■ In the present case the acts of appellants related particularly and peculiarly to the judicial process; in fact they carried out one of the very procedures which have been developed in American law for the preservation of the judicial process itself, i. e., the protection of the integrity of the courts by disbarring attorneys who have shown themselves unfit to practice.[7]

■ The lawyer is an officer of the court of whose bar he is a member.[8] It is his privilege and his duty to promote the administration of justice.[9] The profession of the law is one charged in the highest measure with the public interest.[10] Chief Justice Charles E. Hughes has characterized the service of the profession as "* * * the privileged administration of

[6] See Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, certiorari denied, 59 S.Ct. 146, 83 L.Ed. ——.

[7] Ex parte Garland, 4 Wall. 333, 378, 379, 18 L.Ed. 366; Randall v. Brigham, 7 Wall. 523, 535, 19 L.Ed. 285; Ex parte Wall, 107 U.S. 265, 288, 2 S.Ct. 569, 27 L.Ed. 552.

See Cummings, The Lawyer Criminal, 20 A. B. A. J. 82, 83: "The power of the court to impose fine or imprisonment for contempt should be distinguished from disbarment proceedings. The primary object of the former is to punish the offender; the purpose of the latter is to protect the courts, the bars, and the public. * * * the exercise of both powers can be effectively sustained upon the principle that the attorney is an officer of the court bound by oath to support the administration of the laws, and that fidelity to the court is paramount even to the duty owed to the client."

[8] National Savings Bank v. Ward, 100 U.S. 195, 198, 25 L.Ed. 621; Powell v. Alabama, 287 U.S. 45, 73, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

[9] Harlan F. Stone, Law and its Administration (1915) 163: "The lawyer, upon his admission to the bar, becomes an official of the court, invested with extraordinary powers and privileges. In theory he is a minister of justice, and his highest duty is to aid and promote the administration of justice." See Hertz v. United States, 8 Cir., 18 F.2d 52, 55.

[10] Randall v. Brigham, 7 Wall. 523, 540, 19 L.Ed. 285: "The authority of the court over its attorneys and counsellors is of the highest importance. They constitute a profession essential to society. Their aid is required not merely to represent suitors before the courts, but in the more difficult transactions of private life. The highest interests are placed in their hands, and confided to their management. The confidence which they receive and the responsibilities which they are obliged to assume demand not only ability of a high order, but the strictest integrity. The authority which the courts hold over them, and the qualifications required for their admission, are intended to secure those qualities."

a public trust affording the necessary means by which private and public rights are vindicated, private and public wrongs are redressed, and the very basis of civilization is made secure."[11] The theory of appellee's alleged cause of action was that a right of private property had been improperly interfered with. But a lawyer may properly be dispossessed of that right if he uses it in a manner inimical to the public interest. It is a right which is minor and collateral, indeed, compared to the public significance of the status and functions of the lawyer.[12] The people have entrusted to the courts power to regulate standards of education and admission to the bar and power to regulate the conduct of members of the bar by orders of discipline and disbarment. If those not properly trained or those who are morally disqualified are permitted to practice before the courts, the administration of justice will suffer.[13] "It is not enough that the doors of the temple of justice are open; it is essential that the ways of approach be kept clean." Hatfield v. King, 184 U.S. 162, 168, 22 S.Ct. 477, 479, 46 L.Ed. 481. Moreover, "Our trouble is not simply in keeping the pestilence out of the temple, but in destroying it inside."[14] The courts should act whenever necessary, either on their own motion or upon motion of their committees, to protect the interests of the public.[15]

Appellee's misconception of the situation is revealed by his contention that "* * * it is not the Attorney General's province to defend the officers and employees of the United States, when sued for wrongful acts or for debt or for the commission of crimes." At no stage has the proceeding been the private matter which appellee conceives it to be. In its inception it involved the removal of one unfit to be a member of the bar. In its later phase it was an attack upon judicial and other officers on account of activities clearly within the scope of their authority. It would be difficult to imagine a situation in which the Government has a greater interest, or in which intervention by the Attorney General could be more appropriate, than, as in the present case, to protect officers, properly engaged as these appellants were, from the expense and worry of retaliatory actions resulting from the performance of their duties. The initiation and maintenance of disbarment proceedings is a sufficiently thankless task at best.

The law provides that the Attorney General, *whenever he deems it for the interest of the United States,* may, in person, conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor General or any officer of the Department of Justice to do so.[16] It does not limit his participation or the participation of his representatives to cases in which the United States is a party;[17] it does not direct how he shall participate in such cases; it gives him broad, general

[11] Address before the American Bar Association, 55 A. B. A. Rep. 107, 109.

[12] Elihu Root, Address as President of the American Bar Association, 41 A. B. A. Rep. 355, 362: "The controlling consideration should be the public service, and the right to win the rewards of the profession should be conditioned upon fitness to render the public service. No incompetent sailor is entitled to command a public ship; no incompetent engineer is entitled to construct a public work; no untrained lawyer is entitled to impair the efficiency of the great and costly machinery which the people of the country provide, not for the benefit of lawyers but for the administration of the law."

[13] See State v. Cannon, 206 Wis. 374, 383, 240 N.W. 441, 445: "The relation of the bar to the courts is a peculiar and intimate relationship. The bar is an attaché of the courts. The quality of justice dispensed by the courts depends in no small degree upon the integrity of its bar. An unfaithful bar may easily bring scandal and reproach to the administration of justice and bring the courts themselves into disrepute."

[14] Charles E. Hughes, The Obligation of the Bar, 3 Calif. State Bar J. 223, 224.

[15] See Duke v. Committee on Grievances, 65 App.D.C. 284, 288, 82 F.2d 890, 894, certiorari denied 298 U.S. 662, 56 S.Ct. 751, 80 L.Ed. 1387; Hertz v. United States, 8 Cir., 18 F.2d 52, 54.

[16] R.S. § 359, 5 U.S.C.A. § 309, 2 F.C.A. Title 5, § 309. See also, R.S. § 361, 5 U.S.C.A. § 306, 2 F.C.A. Title 5, § 306; R.S. § 367, 5 U.S.C.A. § 316, 2 F.C.A. Title 5, § 316; Act of September 24, 1789, c. 20, § 35, 1 Stat. 92; R.S. § 771, 28 U.S.C.A. § 485, 8 F.C.A. Title 28, § 485.

[17] Florida v. Georgia, 17 How. 478, 15 L.Ed. 181; New York v. New Jersey, 256 U.S. 296, 308, 41 S.Ct. 492, 65 L.Ed. 937. See 1857, 8 Op. Attys. Gen. 399.

powers intended to safeguard the interests of the United States in any case, and in any court of the United States, whenever in his opinion those interests may be jeopardized. The Attorney General occupies no subordinate position when he elects to enter such a proceeding, whether in person or by his representatives. On the contrary, the law contemplates that—consistent with the proper interests of private litigants and, so far as concerns the interests of the United States—he shall have full control of the prosecution or defense of the case.[18]

Moreover, it is not the function of the trial court to supervise the Attorney General in the exercise of the discretion thus vested in him. In such cases he appears as an officer of the court it is true, but he appears also, and primarily, as the head of one of the great executive departments to protect the interests of the United States, under a special and extraordinary statutory authorization.[19] As appellants in their brief well say:

"Again, if the right of the Attorney General to act rests upon a judicial determination of the Court where the suit is pending that the asserted unlawful, illegal, or unauthorized acts were lawful and within the authority and in the discharge of official duty, then the discretion of the Attorney General could be exercised only at a time when the occasion for its exercise had passed."

Throughout the years since the first Judiciary Act the Attorney General and his representatives have appeared on many occasions, in actions between private persons where the interests of the United States were involved, and in behalf of officers of the United States who were sued by others.[20] Under the well recognized rule this uniform practice may properly be regarded as having been approved by Congress through the adoption of later statutes, and particularly by the sweeping provisions of Section 359, R.S. (5 U.S.C.A. § 309, 2 F.C.A. Title 5, § 309).[21]

If in a particular case the Attorney General elects, under the authority of Section 359, R.S., to conduct the prosecution or defense, it is, of course, necessary that he make an appearance for that

---

[18] Sutherland v. International Ins. Co., 2 Cir., 43 F.2d 969, 970, certiorari denied 282 U.S. 890, 51 S.Ct. 103, 75 L.Ed. 785.

[19] See Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879; McGrain v. Daugherty, 273 U.S. 135, 150, 47 S.Ct. 319, 320, 71 L.Ed. 580, 50 A.L.R. 1: "The Department of Justice is one of the great executive departments established by congressional enactment, and has charge, among other things, of the initiation and prosecution of all suits, civil and criminal, which may be brought in the right and name of the United States to compel obedience or punish disobedience to its laws, to recover property obtained from it by unlawful or fraudulent means, or to safeguard its rights in other respects; *and also of the assertion and protection of its interests when it or its officers are sued by others.* The Attorney General is the head of the department, and its functions are all to be exercised under his supervision and direction." [Italics supplied] See also, Mundy v. McDonald, 216 Mich. 444, 450, 451, 185 N.W. 877, 880, 20 A.L.R. 398; Florida v. Georgia, 17 How. 478, 490, 15 L.Ed. 181: "For it is the familiar practice of the court to hear the attorney-general in suits between individuals, *when he suggests that the public interests are involved* in the decision. And he is heard, not as counsel for one of the parties on the record, but on behalf of the United States, and as representing their interests." [Italics supplied]

[20] See In re Neagle, 135 U.S. 1, 12, 10 S.Ct. 658, 34 L.Ed. 55; Anderson v. Dunn, 6 Wheat. 204, 217, 5 L.Ed. 242; Gibbons v. Ogden, 9 Wheat. 1, 158, 6 L. Ed. 23; Elliott v. Swartwout, 10 Pet. 137, 138, 9 L.Ed. 373; Bend v. Hoyt, 13 Pet. 263, 265, 10 L.Ed. 154; Hardy v. Hoyt, 13 Pet. 292, 10 L.Ed. 167; Dymes v. Hoover, 20 How. 65, 66, 15 L.Ed. 838; Belknap v. Schild, 161 U.S. 10, 15, 16 S.Ct. 443, 40 L.Ed. 599; United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L. Ed. 171; Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Illinois v. Fletcher, C.C.N.D.Ill., 22 F. 776; Horne v. Aderhold, D.C.N.D.Ga., 1 F. Supp. 690; Jones v. McGill, D.C.N.H., 46 F.2d 334; DeArnaud v. Ainsworth, 24 App.D.C. 167, 174, 51 L.R.A.,N.S., 163; Farr v. Valentine, 38 App.D.C. 413, 417, Ann.Cas.1913C, 821; Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211; Snyder v. Hart, 64 App.D.C. 353, 78 F.2d 237. See also, 1857, 8 Op. Attys. Gen. 399; 1857, 9 Op. Attys. Gen. 51; 1891, 20 Op. Attys. Gen. 228.

[21] National Lead Co. v. United States, 252 U.S. 140, 145–147, 40 S.Ct. 237, 64 L.Ed. 496; Brewster v. Gage, 280 U.S. 327, 336, 337, 50 S.Ct. 115, 74 L.Ed. 457; McFeely v. Commissioner, 296 U.S. 102, 108, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304; Zellerbach Paper

purpose. The law does not require, however, that such an appearance be made in the name of the United States. Moreover, although in some cases there might be doubt as to the party in whose behalf such an appearance should be made, there is no room for doubt where, as here, the action is against public officers on account of acts performed in the course of their official duty.[22]

Much of appellee's argument apparently is based upon the mistaken assumption that the same rule governs the appearance and participation of the Attorney General in a case such as the present, as would govern an attorney representing a private client in a case involving no interests of the United States. Many of the cases upon which he relies are pertinent only to the latter type of case. Even in such a case, however, the presumption is that an attorney at law who appears in regular manner on behalf of a party litigant has authority to do so;[23] and one who would successfully challenge his authority must present substantial proof[24] in the form of countervailing evidence[25] that authority is lacking, in order to justify, on that ground, an order to strike a pleading from the files. While it is true in such a case that the court has power to require

an attorney, one of its officers, to show his authority to appear,[26] this is not an arbitrary power which permits the court completely to disregard the presumption of authority previously stated, or summarily to remove an attorney from a case without a hearing, or other opportunity to defend his authority, as was done in the present instance. The question in each case is "as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the Court, and ought to be adapted to the case."[27]

United States v. Throckmorton, 98 U. S. 61, 25 L.Ed. 93, and other cases cited by appellee, having to do with proceedings to impeach land patents issued by the Government under its seal, are in no sense analogous to the present case. In those cases the question was whether the required consent of the Attorney General had been procured for initiation of such proceedings. There the proceedings were supposed to be commenced in the name of the United States to impeach its own previous action. Here the action was commenced by appellee, a private citizen, in his own name, against officers of the United States Government, and the only question involved is whether the Attorney General has power to appear to protect the interests

Co. v. Helvering, 293 U.S. 172, 179, 180, 55 S.Ct. 127, 79 L.Ed. 264; United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 95, 56 S.Ct. 353, 80 L.Ed. 500; United States v. Midwest Oil Co., 236 U.S. 459, 35 S.Ct. 309, 59 L. Ed. 673; United States v. Macdaniel, 7 Pet. 1, 14, 15, 8 L.Ed. 587.

[22] See McGrain v. Daugherty, 273 U. S. 135, 151, 152, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1. See also, Mundy v. McDonald, 216 Mich. 444, 450, 451, 185 N.W. 877, 879, 880, 20 A.L.R. 398.

[23] Osborn v. United States Bank, 9 Wheat. 738, 829, 830, 6 L.Ed. 204. See Ritchie v. McMullen, 159 U.S. 235, 241, 16 S.Ct. 171, 40 L.Ed. 133; In re Gasser, 8 Cir., 104 F. 537, 538; Hatfield v. King, C.C.N.D.W.Va., 131 F. 791, 794, 795; Aaron v. United States, 8 Cir., 155 F. 833, 836; In re Brashear, D.C.W.D.Pa., 275 F. 481, 485; Bonnifield v. Thorp, D.C.Alaska, 71 F. 924, 927, 928, appeal dismissed, 9 Cir., 83 F. 1022; In re Tidewater Coal Exch., D.C.S.D.N.Y., 274 F. 1011, 1014, affirmed, 2 Cir., 280 F. 638; Drew v. Burley, D.C.Or., 287 F. 916, 919; Rodgers v. Bromberg, 5 Cir., 53 F.2d 723, 724, certiorari denied 285 U.

S. 542, 52 S.Ct. 314, 76 L.Ed. 934; Huntington Mfg. Co. v. Bradford Worsted Spinning Co., D.C.Mass., 37 F.2d 730, 731; Feldman Investment Co. v. Connecticut General Life Ins. Co., 10 Cir., 78 F.2d 838.

[24] Hill v. Mendenhall, 21 Wall. 453, 454, 22 L.Ed. 616; Bonnifield v. Thorp, supra note 23. See also, Department of Water and Power v. Anderson, 9 Cir., 95 F.2d 577, 580.

[25] Huntington Mfg. Co. v. Bradford Worsted Spinning Co., In re Gasser, both supra note 23; In re Illinois Fireworks & Display Co., D.C.E.D.Ill., 4 F. Supp. 200, 202.

[26] Pueblo of Santa Rosa v. Fall, 273 U.S. 315, 319, 47 S.Ct. 361, 362, 71 L. Ed. 658; Sutherland v. International Ins. Co., 2 Cir., 43 F.2d 969, certiorari denied 282 U.S. 890, 51 S.Ct. 103, 75 L. Ed. 785. See also, In re Retail Chemists Corp., 2 Cir., 66 F.2d 605, 608.

[27] Pueblo of Santa Rosa v. Fall, supra note 26, quoting with approval from Washington J., in The King of Spain v. Oliver, Fed.Cas.No.7814, 2 Wash.C.C. 429, 430. See also, Beecher v. Henderson, 4 Ala.App. 543, 58 So. 805.

of the United States and conduct the defense of its officers. Moreover, even under the circumstances of the Throckmorton Case [28] the court there indicated that the law would have been satisfied if the record had revealed that "some one authorized to use his name" had appeared in behalf of the Attorney General, or if, "without special regard to form, but in some way which the court can recognize" an appearance on behalf of the Attorney General had been made, or if in the argument of the case such an officer had appeared and participated.

We have carefully examined each of appellee's contentions and find them to be without merit.

Reversed.

---

[28] United States v. Throckmorton, 98 U.S. 61, 70, 25 L.Ed. 93.